Commonwealth *v.* Johnson, Appellant.

304

Argued May 22, 1950. Before Drew, C. J., Stern, Stearne, Jones and Bell, JJ.

*William N. Nitzberg,* for appellant.

*Colbert C. McClain,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY MR. JUSTICE HORACE STERN, June 26, 1950:

Jasper Johnson, having been convicted by a jury of murder in the first degree with the imposition of the death penalty, appeals from the dismissal by the trial court of his motions for a new trial and in arrest of judgment.

According to the Commonwealth, Aaron Turner, Johnson, and Clarence Lofton conspired to perpetrate a robbery at the Ace Broom Company factory in Philadelphia on December 15, 1945. Lofton stood outside and acted as the lookout. Turner and Johnson entered the premises, where they were met by Frank Endres, an employe of the factory. Turner hit him on the head with a piece of pipe or a sash-weight, knocking him down and causing injuries from which he died two days later. While he was lying on the floor Johnson went through his pockets and extracted a wallet containing about $175; he then threw the wallet into a coal pile underneath the elevator. The noise occasioned by the assault on Endres brought Charles Simmons, the proprietor of the factory, running into the room; Turner struck him with the same weapon, knocking him to the floor and causing injuries from which he died seven days later. While he was lying on the floor Turner robbed him of his money, the amount of which is not disclosed in the testimony. Turner and Johnson ran out, joined Lofton, and the three of them proceeded to a taproom where they had several drinks and divided the spoils. Johnson was apprehended on June 3, 1946; the two others had been arrested previously, Turner earlier on the same day. Johnson was placed in a cellroom in City Hall and con-

fined there until June 8, a period of five days, when he was taken before a magistrate and testified; he was held for the action of the grand jury and committed without bail. At his trial, which took place in 1947, he denied that he had participated in any way in the robberies and murders.

Johnson's first complaint on this appeal is in regard to references made during the trial, both by the district attorney and the trial judge, to the murder of Charles Simmons; also that the coroner's physician was allowed to testify concerning his autopsy on the body of Simmons and his finding that injuries to the head had caused Simmons' death. It can scarcely be seriously argued that mention of Simmons and the manner of his death should, or could, have been eliminated from the trial since the assaults on Endres and Simmons were made at the same time, with the same weapon, and in the course of the same criminal undertaking. No coherent narrative of the event could have excluded the facts as to the entrance into the room of Simmons and the attack upon him immediately after the assault upon Endres, the robberies from both their bodies, and the flight of the three conspirators from the scene. It all occurred at the same place and time.

During the course of the four or five days of Johnson's incarceration prior to the magistrate's hearing he was questioned from time to time by detectives, either singly or in groups; this was admitted by the Commonwealth and testified to by the detectives themselves. On the night of June 7 he signed a written confession admitting his participation in the crime and reciting in detail the facts in regard thereto; it is suggested by the district attorney that his cooperation with the Commonwealth came after finding out that he had been cheated by Turner in the division of the stolen money. During this period of detention he was not represented by a lawyer, but he made no request for one except to in-

quire whether there would be counsel to represent him when his case came up for trial in court; and he was assured that he would then be represented by an attorney appointed by the court. Except that he wanted to see his "girl friend" he did not ask to be allowed to communicate with any of his friends or relatives; on the contrary, he said that he did not want to see any of them. He claims to have been beaten at various times in connection with the interrogations, but this was strenuously denied by the detectives and no marks or bruises on his body were ever observed by anyone; he did not make any complaint to the magistrate or to the prison authorities that he had suffered any such beatings, nor did he seek the services of the jail physician; his assertion, therefore, that he was beaten is, to say the least, of dubious veracity and was obviously rejected by the jury. The learned trial judge instructed the jury that, if force or duress of any kind had been exerted upon him to compel him to make a statement, a confession so obtained could not be used in evidence against him and that the jury should discard it entirely in their consideration of the case; it was only if made voluntarily that it could be regarded as trustworthy, in which event they could give it such force and effect as they thought it entitled to under the circumstances. This submission to the jury of the question whether the inculpatory statement was coerced or was voluntary was in accord with long established Pennsylvania law: *Commonwealth v. Spardute*, 278 Pa. 37, 48, 122 A. 161, 165; *Commonwealth v. Jones*, 341 Pa. 541, 548, 549, 19 A. 2d 389, 393; *Commonwealth v. Simmons*, 361 Pa. 391, 400, 401, 65 A. 2d 353, 358. Of course it is recognized that the jury's decision on that issue is not conclusive, but is subject to judicial review in order to ascertain whether the methods employed by the police authorities to obtain the confession constituted a violation of the due process clause of the fourteenth amendment of the constitution.

Johnson's principal contention on this appeal is that his signed confession should not have been admitted in evidence because, apart from the alleged, but controverted, beatings, he was held for four or five days after his arrest before being taken before a magistrate for a preliminary hearing, and during that period was subjected to the questioning previously stated. For support of his position he relies upon decisions of the Supreme Court of the United States, which we therefore proceed to examine.

In *Ziang Sung Wan v. United States*, 266 U. S. 1, the accused, a very sick man, was subjected to persistent, lengthy cross-examination day and night by detectives. For ten hours he was led continuously from floor to floor of the building where the murder had occurred. On one occasion the questioning continued from 7 o'clock in the evening until 5 o'clock in the morning during which time he was not allowed to sleep. A confession obtained from him after twelve days of such methods was held inadmissible in evidence.

In *Brown v. Mississippi*, 297 U. S. 278, the accused was seized by a mob, hung by a rope to the limb of a tree, whipped with a leather strap, and threatened with even more severe treatment. It was held that a conviction which rested solely upon a confession thus obtained was void under the due process clause of the fourteenth amendment.

In *Chambers v. Florida*, 309 U. S. 227, the accused, under a haunting fear of mob violence, was subjected to persistent and repeated questioning almost continuously for a week and finally at a session beginning at 3.30 o'clock in the afternoon and lasting all night, being carried on while he was surrounded by the sheriff, the sheriff's deputies, a convict guard, and other officers and citizens. An admission obtained in the early morning after the all-night vigil was held to be compulsory and the conviction obtained by its use was set aside.

In *White v: Texas*, 310 U. S. 530, the accused was kept in jail for six or seven days, and on several successive nights was taken by armed rangers into the woods where he was whipped and interrogated. He was questioned from about 11 o'clock one night to 3 or 3.30 o'clock in the morning. The confession then obtained was held to have been coerced and its use at the trial a violation of the due process clause of the fourteenth amendment.

In *Lisenba v. California*, 314 U. S. 219, the accused was questioned on two occasions at the district attorney's office,—once throughout the night and again the following night from early evening until 3 o'clock the next morning. After being detained in custody for eleven days, during which time he was not examined, he was again interrogated and, after a protracted inquisition, finally confessed at 3 o'clock in the morning. Although his detention was illegal under the state law it was held that the confession was voluntary and its use at the trial was proper.

In *Ward v. Texas*, 316 U. S. 547, the accused, after being arrested, was driven around during three days and nights from county to county, incarcerated in a place more than a hundred miles from his home, questioned continuously, and frightened with threats of mob violence. It was held that the use of the confession obtained under such circumstances was a denial of due process and voided the conviction.

In *McNabb v. United States*, 318 U. S. 332, the accused persons were detained in a room where there was nothing they could sit or lie down on except the floor. On two successive nights they were questioned on and off by at least six officers, beginning at 9 o'clock and continuing until 1 or 2 o'clock in the morning. It was held that the evidence thereby elicited should have been excluded. It was emphasized in the court's opinion, however, that the trial was in a federal, not a state,

court, and therefore the question did not depend upon the application of the due process clause of the constitution but on the exercise of the court's supervisory authority over the administration of criminal justice in the federal courts and the rules of evidence formulated by it for application in federal criminal prosecutions.

In *Anderson v. United States*, 318 U. S. 350, the accused persons were detained in violation of the state statute and questioned intermittently all day over a period of six days in the hostile atmosphere of a small company-dominated mining town, the interrogations finally resulting in the obtaining of incriminating statements. These were held inadmissible in evidence, not, however, on the ground that they failed to meet the requirements of the due process clause, but, as in the *McNabb* case, because they violated the rules of evidence applied by federal courts in the trial of criminal cases. See *Townsend v. Burke, Warden*, 334 U. S. 736, 738; *United States v. Mitchell*, 322 U. S. 65, 67, 68. In the latter case it was pointed out that the review by the United States Supreme Court of state convictions presents a very different situation from that of cases dealing with the admissibility of evidence in criminal cases in the federal courts; the court said that "in cases coming from the state courts in matters of this sort, we are concerned solely with determining whether a confession is the result of torture, physical or psychological, and not the offspring of reasoned choice." ; see also *Malinski v. New York*, 324 U. S. 401, 411.

In *Ashcraft v. Tennessee*, 322 U. S. 143; 327 U. S. 274, the accused was placed at a table in the jail with a powerful electric light over his head which blinded his eyes, and he was questioned by relays of detectives from a Saturday evening at 7 o'clock until the following Monday morning at approximately 7 o'clock, during which time he was not allowed to have any sleep or rest. The confession thereby obtained from him, as well as testi-

mony narrating what took place during the inquisition, was held to be involuntary and inadmissible in evidence, and the conviction was reversed.

In *Lyons v. Oklahoma*, 322 U. S. 596, it was held that a confession was validly obtained and admissible in evidence although the accused had been interrogated on one occasion for two hours and again, after eleven days of further incarceration, from about 6.30 o'clock in the evening until between 2 and 4 o'clock the following morning, and later also that same evening, a large number of police, prosecuting and penitentiary officials being present during the interrogation and no counsel having been supplied to him.

In *Malinski v. New York*, 324 U. S. 401, the accused was stripped and kept naked in a hotel room from 11 o'clock in the morning until 6 o'clock in the evening and was then detained there for several more days during which time he was subjected to questioning; subsequently he was also questioned at a police station until 2 o'clock in the morning. The district attorney said at the trial that the police procedure had been quite proper in letting Malinski "sit around with a blanket on him, humiliate him there for a while; let him sit in the corner, let him think he is going to get a shellacking." From this admission on the part of the prosecuting officer the court concluded that an oral confession obtained from the accused was the product of fear, was clearly coerced, and had therefore been improperly admitted in evidence.

In *Haley v. Ohio*, 332 U. S. 596, a 15-year-old boy was subjected to questioning by relays of police from shortly after midnight until about 5 o'clock the following morning when he confessed. He was then detained for three days during which period a lawyer retained by his mother tried to see him twice but was refused admission by the police, and his mother also was not allowed to see him. The court said that the boy's age, the

hours when he was grilled, the duration of his quizzing; and the fact that requests to have counsel and his mother advise him were denied, all showed that the confession had been wrung from him by methods which could not be sanctioned and which violated the due process clause of the fourteenth amendment.

In *Townsend v. Burke, Warden,* 334 U. S. 736, the court reversed a conviction because the trial judge imposed sentence, in the absence of the prisoner's counsel, under an obvious mistake as to the prisoner's prior criminal record. The prisoner had been held incommunicado for a period of 40 hours between his arrest and his plea of guilty, but the court stated (p. 738) that "lawfulness of the detention is not a factor in determining admissibility of any confession. . . ."

In *Watts v. Indiana,* 338 U. S. 49, the accused was interrogated at police headquarters by officers in relays from about 11.30 o'clock one night until between 2.30 and 3 o'clock the following morning, and the next afternoon from about 5.30 o'clock until 3 o'clock the following morning, and the questioning was continued for four successive days; on the fifth day the prisoner made an incriminating statement at 3 o'clock in the morning after having been continuously questioned since 6 o'clock of the preceding afternoon. He had been kept the first two days in solitary confinement in a cell "aptly enough called 'the hole' ". Apart from the several night sessions the police had intermittently interrogated him during the day, and also, on three days, had driven him around town hours at a time with a view to obtaining information from him respecting the crime. He had been denied proper opportunities for sleep and a decent allowance of food. The court held that the use of the confession thereby obtained was a violation of the due process clause and accordingly the conviction was reversed.

In *Turner v. Pennsylvania,* 338 U. S. 62, in which case the accused was one of the three persons implicated

in the crime here involved, he was imprisoned between the time of his arrest and the magistrate's hearing during exactly the same period as Johnson. During that time he was examined on June 3 for three hours in the afternoon and again that night from 8 to 11 o'clock; on June 4 he was questioned for about four hours more; on June 5 he was interrogated for another four hours and on June 6 during day and night sessions totaling six hours; on June 7 the questioning began in the afternoon and continued for three hours, and later that day was resumed until finally, at about 11 o'clock that night, he admitted guilt, and at 9 o'clock the following morning his statement was reduced to writing. It was held that the confession was coerced and should not have been admitted in evidence.

In *Harris v. South Carolina,* 338 U. S. 68, the accused, in the stifling heat of the cubicle in which the interrogation was conducted, was questioned mornings, afternoon and evenings for several days, on one occasion from 1.30 in the afternoon until past 1 o'clock the following morning with only an hour's interval at 5.30 o'clock. The sheriff, one of the interrogators, threatened the prisoner that he would arrest his mother for handling stolen property. It was held that a confession thus obtained should not have been used at the trial of the accused and his conviction was reversed.

The above cited cases are, if not the only, at least the more important ones decided by the United States Supreme Court, and from them it is possible to formulate certain principles. One is that a confession may have been given voluntarily although it was made to police officers while in custody and in answer to an examination conducted by them: *Ziang Sung Wan v. United States,* 266 U. S. 1, 14; *McNabb v. United States,* 318 U. S. 332, 346; *United States v. Mitchell,* 322 U. S. 65, 69. Another is that the effect of the mere denial of a prompt preliminary examination is a matter of state,

not of federal, law and to refuse. it does not constitute a violation of the fourteenth amendment although it is one of the facts to be considered on an allegation that a confession used at the trial was coerced: *Lyons v. Oklahoma,* 322 U. S. 596, 597, 598, footnote 2. And a third is that in cases where the evidence as to the methods employed to obtain a confession is conficting,—that is to say, where there is a dispute as to whether beatings, whippings, or other acts of brutality actually occurred, —and that issue has been resolved by the trial court and jury, the appellate court will accept the determination of the triers of fact if there was any substantial evidence to support their conclusion: *Lisenba v. California,* 314 U. S. 219, 238; *Ward v. Texas,* 316 U. S. 547, 552; *Mc-Nabb v. United States,* 318 U. S. 332, 339, footnote 5; *Lyons v. Oklahoma,* 322 U. S. 596, 602; *Haley v. Ohio,* 332 U. S. 596, 597, 598.

Measuring, then, the facts in the present case, so far as they are admitted by the Commonwealth, by the standards thus formulated by the Supreme Court, it should be readily apparent that none of the circumstances attending Johnson's confession, either singly or collectively, established that it was coercively obtained and that its admission in evidence at the trial therefore constituted a violation of the constitutional protection of due process of law. None of the lurid features which characterized the other cases marked any of the treatment accorded to Johnson; there was no violence, no threats or inducements of any kind, not even any resort to artifice to procure a confession. All that can be said is that (1) he was detained for a period of five days before being given a preliminary hearing; (2) no counsel was assigned to him nor communication established with friends or relatives; (3) he was subjected to questioning from time to time by groups of detectives. As to the detention prior to the magistrate's hearing, which, as previously stated, is admittedly a matter of state law,

there is no statute in Pennsylvania which stipulates any precise time in which such a hearing must be held.[1] Furthermore, as was said in *Commonwealth v. Agoston,* 364 Pa. 464, 479, 72 A. 2d 575, 583 : "Such a delay in granting a defendant a preliminary hearing cannot properly be adjudged a denial of due process. If the delay is due to the fact that the time between the arrest and the hearing is spent in attempting by improper means to force a confession from a prisoner, the wrong done the prisoner is not the delay in giving him a hearing, but the methods used to secure a confession. . . . A confession may be secured from a prisoner by unlawful methods one hour after his arrest and he may be given a hearing one hour after that, but the promptness of the hearing would not make his confession admissible. On the other hand a defendant may not be given a hearing for ten days after his arrest, yet during that period he might voluntarily confess his guilt without any questions whatsoever. The delay in giving him a hearing would not make his confession inadmissible."

As to the fact that defendant was not represented by counsel during the period of interrogation, it might well be that, if he had requested such representation and counsel had nevertheless been denied him, his rights would have been gravely infracted : *Commonwealth v. Spardute,* 278 Pa. 37, 46, 122 A. 161, 164 ; *Commonwealth v. Jones,* 341 Pa. 541, 548, 19 A. 2d 389, 393. Here, however, no such request was made, but only an inquiry as to

---

[1] The Act of April 20, 1869, P. L. 1187, merely provides that, in Philadelphia, the preliminary hearing of the person arrested must be before the magistrate whose office is nearest to the place of arrest; this was designed to prevent a selection by the police of a "favorable" magistrate. It was not intended to mean, and has never been held to mean, that the person arrested must be taken before the magistrate immediately upon being apprehended. At common law no preliminary hearing whatever was required; it is an institution resting entirely on statute : 22 C. J. S. 484, §332(a).

whether counsel would be assigned to him at the trial. There is no provision in the law of Pennsylvania that a person arrested, even though on a charge of murder, must be supplied with counsel as soon as he is taken into custody. The Pennsylvania statutes provide for assignment of counsel *upon the trial* of a capital crime (Act of May 31, 1718, 1 Sm. L. 105, §IV) or to any person *under indictment* for murder, to represent him at the trial (Act of March 22, 1907, P. L. 31).[2] The decisions of the United States Supreme Court are to the effect that counsel must be assigned for the defense of the accused in capital cases after indictment, or at least at the time of arraignment: *Powell v. Alabama*, 287 U. S. 45; *Tomkins v. Missouri*, 323 U. S. 485; *Hawk v. Olson, Warden*, 326 U. S. 271; *De Meerleer v. Michigan*, 329 U. S. 663. Certainly due process has never been held to require that the State should provide a suspect with counsel from the very moment of his arrest: *Commonwealth v. Agoston*, 364 Pa. 464, 480, 72 A. 2d 575, 583. As for the fact that no relatives or friends visited or were in touch with Johnson during the period of his detention, he himself declared that he did not wish to see any one except his "girl friend".

All that we have left, therefore, in the present case as affording any support whatever to Johnson's contention is the questioning to which he was subjected. But, unlike any of the cases in the United States Supreme Court previously discussed, there was here no such "protracted, systematic and uncontrolled subjection of an accused to interrogation" (*Watts v. Indiana*, 338 U. S.

---

[2] In *Commonwealth v. Lenousky*, 206 Pa. 277, 55 A. 977, it was held that the testimony of a witness at a magistrate's hearing could not be used at the trial (the witness having meanwhile disappeared) because the defendant, not having been represented at the hearing by counsel, had not cross-examined the witness nor been informed of his right so to do. The case is far from holding that the accused must be assigned counsel at a preliminary hearing.

49, 55) as could possibly be regarded as physically or psychologically coercive in order to obtain an inculpatory statement. The questioning of Johnson was only at proper and normal hours—no late night or early morning sessions—and each time ranged in duration from only about 15 minutes to a maximum of an hour and a half; whereas in the *Turner* case the examinations covered a total of 23 hours during the five days of his incarceration the total in Johnson's case during the same period was only 6 hours, —*an average of scarcely more than an hour a day.* While it is true that on some of the occasions several detectives participated in the interrogation, there is nothing to indicate—so far as the Commonwealth admits—that there was any hectoring, badgering or threatening of the accused, that he was ever denied rest or food, or that he was subjected in any manner to physical discomfort. Surely, therefore, it would be going further than any case thus far decided to hold that Johnson's confession was coercively obtained, neither is it thought that effective enforcement of the criminal law would be possible if a confession were to be held inadmissible when obtained by even such a limited amount of questioning of a suspect while being detained for a reasonable period prior to a preliminary hearing; see Wigmore on Evidence, 3d ed. vol. III, p. 320, §851.

Johnson contends that the confessions of Turner and Lofton, who were associated with him in the commission of the crime, should not have been admitted in evidence. It is true, of course, that the declarations of a co-conspirator are evidence against the others only so long as the conspiracy continues, and if made afterwards they are not admissible: *Wagner v. Aulenbach,* 170 Pa. 495, 499, 32 A. 1087, 1088; *Commonwealth v. Petrillo,* 338 Pa. 65, 82, 83, 12 A. 2d 317, 326. But appellant misconceives the theory on which those confessions were introduced in the present instance. They were not

admitted, as the trial judge correctly instructed the jury, as proof of the facts contained therein, but, under the familiar, well-established principle of the law of evidence, as statements made in Johnson's presence and hearing which, though incriminating in character and naturally calling for a denial, were not challenged or contradicted by him although he had an opportunity and was at liberty to speak. The fact of his failure to deny the accusations against him contained in the confessions of his confederates was admissible in evidence as an implied admission of the truth of the charges thus made, on the theory that ordinarily an innocent person will spontaneously repel false accusations against him and that failure so to do is, therefore, some indication of guilt. It is quite immaterial, therefore, whether the statements made by Turner and Lofton were themselves freely made or otherwise, since the probative force of such an accusatory statement is derived, not from the credibility of the accuser, but from the silence of the accused in response to it: *Commonwealth v. Carelli*, 281 Pa. 602, 606, 127 A. 305, 306; *Commonwealth v. Vallone*, 347 Pa. 419, 421, 32 A. 2d 889, 890. Not only did Johnson not attempt to refute anything contained in the statements of Turner and Lofton, but he added his own signature thereto as a witness without, according to the Commonwealth's evidence, any compulsion whatever. This was an affirmative act which added to the effect of his tacit acquiescence: *Commonwealth v. Brooks*, 355 Pa. 551, 554, 50 A. 2d 325, 327.

Finally, appellant complains that his testimony before the magistrate at the preliminary hearing should not have been accepted in evidence. He claims that he was intimidated into making the same admissions there as were contained in his written confession, but this was emphatically denied by the Commonwealth's testimony; on the contrary, there is convincing evidence to the effect that he expressed a desire to go to the magistrate's hear-

ing and to testify there, and that he was sworn at his own request after being warned by the district attorney that anything he said might be used against him in court and that he did not have to say anything if he did not want to. His testimony on the witness stand in the office of the magistrate was substantially in accord with the account he had given in his written confession of the details of the robberies and the extent and manner of his participation therein.

The crime of which appellant stands convicted was an extremely dastardly one, and, in our opinion, he was not denied due process of law nor was any of his other constitutional rights impaired; therefore he is not entitled to a new trial.

Judgment and sentence affirmed.

---

DISSENTING OPINION BY MR. JUSTICE JONES:

In *Turner v. Pennsylvania,* 338 U. S. 62, the Supreme Court of the United States held that Turner's confession of guilt of the felonious homicide (whereof the present appellant Johnson stands convicted) was coerced and should not have been admitted in evidence. Wherefore, the Supreme Court reversed this court's judgment (see 358 Pa. 350, 368) which had affirmed Turner's conviction of murder in the first degree with sentence of death.

Notwithstanding the able and painstaking opinion for the court, in the instant case, I am unable to distinguish, on any basis of relative integrity, between Turner's confession and the confession of Johnson which was taken at the same time and introduced against him at his trial in the court below. The majority opinion, after stating that Turner ". . . was imprisoned between the time of his arrest and the magistrate's hearing during exactly the same period as Johnson", seeks to differentiate the

two confessions on the ground that the interrogating officers devoted considerably more time to questioning Turner than they did Johnson. Whatever may have been the reason for that, it is my belief that the disqualification of a confession depends more upon the qualitative than the quantitative conduct of the interrogators although I recognize that the quantity may have some bearing on the quality. Both Turner and Johnson, along with a third confederate, one Lofton, signed their purported written confessions contemporaneously under the same custody and circumstances. Each signed his own confession which was then signed by his two confederates as witnesses; and all three confessions were introduced in evidence at the trial of Johnson, now under review, just as they had been at the trial of Turner. Both Turner and Johnson pleaded "Not Guilty" and repudiated their confessions.

The majority opinion reasons that the now invalidated Turner confession was not introduced in evidence against Johnson *as a confession* but on the theory that it contained charges against Johnson made in his presence which he did not deny or refute and which thereby became competent evidence against Johnson as admissions. Just what happens to the defendant's constitutional right to stand mute when being charged with crime, I fail to understand despite the authority cited in the majority opinion for the procedure. Nor is it easy to see how the judicially rejected Turner confession can constitute a valid statement of charges against Johnson upon which his implied admission can be predicated.

I would reverse the judgment and give Johnson the same legal rights already accorded Turner under the ruling of the Supreme Court, namely, a new trial with the alleged confessions excluded from evidence.