Commonwealth *v.* Moore, Appellant.

Argued January 8, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*A. Martin Herring*, with him *Rudolph S. Pallastrone*, for appellant.

*James D. Crawford*, Deputy District Attorney, with him *Milton M. Stein*, Assistant District Attorney, *Richard A. Sprague*, First Assistant District Attorney, and *Arlen Specter*, District Attorney, for Commonwealth appellee.

OPINION BY MR. CHIEF JUSTICE BELL, June 28, 1971:

A jury found appellant, Nathaniel Moore, guilty of murder in the first degree and sentenced him to life imprisonment.

Charles Tovsky, the deceased victim, was the proprietor of a grocery store in Philadelphia. At approximately 1:00 P.M. on January 3, 1968, he was robbed by two men, both armed with guns. During the robbery, decedent drew a gun from under the counter, but before he could use it was shot through the head by one of the robbers. He died shortly thereafter as the result of this wound.

The Commonwealth produced two eyewitnesses to the crime, but neither was able to identify appellant. Another Commonwealth witness testified that she had seen the appellant and his confederate receive guns from a man who had allegedly planned the robbery. She further testified that later that day she saw the three men together and the man alleged to have planned the robbery asked appellant what had gone wrong. However, this witness failed to connect this conversation directly to or with the robbery and murder of Tovsky.

In the last analysis, the conviction can be sustained only if defendant's confession was voluntarily, knowingly and intelligently made and was legally and Constitutionally admissible.

Pursuant to a Federal fugitive felon warrant,* four FBI agents went to *the home of appellant's uncle* in Pittsburgh, Pennsylvania. After announcing their purpose, appellant's uncle gave them permission to search his home. At this point, appellant's uncle told them that appellant was hiding in the basement. Two of the agents entered the basement, guns drawn, and told the appellant to come out. He did not, so the agents searched the basement and finally discovered appellant hiding under a sofa. The agents then searched and handcuffed appellant. They informed him that he was

---

* 18 U.S.C., Section 1073.

being arrested for unlawful flight to avoid prosecution on a charge of murder, and proceeded to give him the required *Miranda* warnings.

Appellant was then taken to FBI headquarters in Pittsburgh, where he was detained for an hour while he was being photographed and fingerprinted. He was there given a written form containing a statement of his Constitutional rights, which he signed. Appellant was then removed to the office of the United States Marshal, who took him into custody and gave him a hearing before a United States Commissioner. Finally, appellant was incarcerated as a Federal prisoner in the Allegheny County jail. *No interrogation was conducted by any FBI agents at any time.*

The next day, appellant was taken into custody and placed under arrest by two Philadelphia detectives, who transferred him to Pittsburgh Police Headquarters. They began to interview appellant at 11:55 A.M. Appellant was informed that he was wanted for the robbery and murder of Charles Tovsky. No questions were asked of appellant until he had been given the requisite *Miranda* warnings, which procedure took ten full minutes. The warnings and waiver were first read to appellant from the standard police card; the card was then handed to appellant, who first read it to himself, and then read it aloud, and then he signed it on both sides.

The preliminary interrogation lasted only twenty-five minutes, during which time appellant orally gave a full confession of his participation in the robbery and killing. Appellant's verbal confession was then typed; appellant then read it in its entirety and then signed the ten-page original and two carbon copies. Later that evening, appellant was returned to Philadelphia by plane and taken to the Police Administration Building for arraignment.

Appellant subsequently filed a motion to suppress his confession for the reasons: (1) the confession was obtained during a period of unnecessary delay between the time he was arrested and the time he was arraigned, in violation of Federal Rule of Criminal Procedure 5(a) and (b); (2) the confession was obtained during a period of unnecessary delay in preliminarily arraigning the appellant before a Justice of the Peace or other Judicial officer in Pittsburgh or Philadelphia, in violation of the Pennsylvania Rules of Criminal Procedure and the Act of April 20, 1869, P. L. 1187, §1, 53 P.S. §16300; and (3) the confession was an involuntary statement when viewed in the totality of the circumstances surrounding his interrogation. The motion was dismissed by the Court after a full suppression hearing, during which he was represented by counsel.

Appellant contends that his arrest and interrogation were "a joint undertaking" of Federal and State authorities so that Federal standards and rules of evidence should apply. He asserts, we repeat, as the relevant Federal standards (1) Federal Rule of Criminal Procedure 5(a) and (b), which requires that an arrested person be taken before the nearest available Commissioner "without unnecessary delay" for the purpose of being advised of his Constitutional rights; and (2) the Mallory-McNabb Doctrine,* which would exclude any confession obtained from an accused during a period of "unnecessary delay" under the above mentioned Rule 5. Even assuming that Federal standards are applicable, we are unable to find any "unnecessary delay" in bringing appellant for a hearing before a United States Commissioner. Appellant was arrested at his uncle's home at 12:02 P.M. and brought before a United States Commissioner by 1:12 P.M. Further-

---

* *Mallory v. United States*, 354 U.S. 449; *McNabb v. United States*, 318 U.S. 322.

more, appellant was not questioned at any time by the FBI agents concerning his participation in any crime. Under these circumstances, this contention is obviously devoid of any merit.

Alternatively, appellant argues that if Federal standards are inapplicable, his confession should still be excluded as violative of the Pennsylvania Rules of Criminal Procedure and the Act of April 20, 1869, P. L. 1187, Section 1, 53 P.S. §16300.

Section 1 of the Act of April 20, 1869, supra, provides: "In all cases of arrest made by any police officer or constable of the city of Philadelphia upon any of the streets or highways of any of the cities of this commonwealth, it shall be the duty of the police officer or constable making such arrest to take the person arrested for a hearing to the office of the alderman or magistrate nearest to the place where said arrest has been made, except when the person shall be arrested for intoxication. . . ." This statute has been interpreted as being designed "to prevent a selection by the police of a 'favorable magistrate' and not to mean that 'the person arrested must be taken before the [nearest] magistrate *immediately upon being apprehended.'* "* *Commonwealth v. Johnson*, 365 Pa. 303, 315, 74 A. 2d 144, rev'd. on other grounds 340 U.S. 881. Moreover, we believe that Pennsylvania Rules of Criminal Procedure set forth the proper guidelines to be followed in arraigning a defendant and in judging the propriety of police conduct generally, and these have not been violated.

Rule 115 (now Rule 117) of the Pennsylvania Rules of Criminal Procedure details the procedure to be followed when a defendant is arrested by a warrant executed outside of the county of issuance, as in the instant case. Subsection (a) mandates that the defend-

---

* Italics throughout, ours, unless otherwise indicated.

ant be taken before an issuing authority in the county of arrest "where the offense charged is bailable before an issuing authority." However, subsection (a) is inapplicable herein, because appellant was charged with a capital offense and would not have been bailable before an issuing authority. See Rule 4002 of the Pennsylvania Rules of Criminal Procedure; see also, Article I, Section 14 of the Constitution of Pennsylvania.

Appellant correctly asserts that under Pennsylvania law, even before the adoption of Rule 115, the proper practice has been for arresting officers "to take a defendant promptly before a magistrate." *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A. 2d 426. We believe this is still a wise practice, even though the arresting officers may fully apprize the defendant of all his Constitutional rights. See, Pa. Rule of Criminal Procedure 119. However, it does not follow that a confession is inadmissible for the sole reason that a defendant is not immediately taken before a magistrate, for "[a] valid Miranda waiver is necessarily, for the duration of the waiver, also a waiver of an immediate *judicial** warning of Constitutional rights." *Frazier v. United States,* 419 F. 2d 1161 (1969).

The crucial question is whether appellant voluntarily and knowingly waived his *Miranda* rights. The fact that he was interrogated before either being taken to a magistrate in Pittsburgh or returned to Philadelphia for preliminary arraignment does not, standing alone, affect the validity of his confession.

We have examined the record in detail, and we are in agreement with the Opinion of the suppression-hearing Judge, who found (1) that appellant made a voluntary and knowing waiver of his right to counsel and of his right to remain silent; (2) that his statement to the police was given voluntarily; and (3) that his "will

---

* Italics in the *Frazier* case.

was not overborne either by fear, by his treatment by law enforcement officers, by any physical discomfort he had, or by any combination of the aforesaid elements." We repeat that appellant was given his *Miranda* warnings in full on at least three occasions before signing his confession; that the Philadelphia detectives spent the first ten minutes of their interview reading these warnings to appellant, who read them aloud and signed the warnings card on both sides; and that appellant was questioned for only twenty-five minutes before he began giving his confession.

In addition to the pre-arraignment detention, appellant attempted to establish the involuntariness of his confession by testifying (1) that he had only a tenth-grade education and was a "slow" student in school; (2) that he was "scared" during the interrogation; (3) that a burn on his hand caused him severe pain and discomfort throughout the interrogation; and (4) that these factors indicate that his confession was not the product of his free will, but rather elicited out of fear. The Commonwealth introduced testimony to contradict appellant's contentions. With credibility resolved in favor of the Commonwealth, there is more than ample evidence to support the conclusion of the Court below that appellant's confession was freely given, after he had voluntarily and knowingly waived his rights to counsel and to remain silent.

We have examined all of appellant's contentions and find no merit in any of them.

Judgment of sentence affirmed.

Mr. Justice ROBERTS concurs in the result.