## Commonwealth *v.* Eiland, Appellant.

Argued November 21, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

568

*Roy H. Davis,* for appellant.

*Albert L. Becker,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, March 16, 1973:

In November, 1971, appellant, William Eiland, was tried nonjury and adjudicated guilty of conspiracy and murder in the second degree. Sentence was deferred pending post-trial motions. Following the denial of motions for a new trial and in arrest of judgment appellant was sentenced to imprisonment of three to ten years on the murder charge and received a suspended sentence on the conspiracy charge. In this direct appeal appellant alleges three errors.*

---

* After appellant filed his appeal he subsequently withdrew it and the trial court vacated the sentence. This was apparently done to allow further investigation on the question of appellant's involvement in the shooting. On April 12, 1972, the trial court reimposed sentence and appellant filed the instant appeal.

Appellant first argues that the evidence presented at trial was insufficient to support a verdict of guilty of conspiracy. This Court has held that "the test of the sufficiency of the evidence . . . is whether, accepting as true all the evidence and all reasonable inference therefrom, upon which if believed the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted." *Commonwealth v. Smith*, 447 Pa. 457, 463, 291 A. 2d 103, 105 (1972) ; *Commonwealth v. Frye*, 433 Pa. 473, 481, 252 A. 2d 580, 584 (1969), see also *Commonwealth v. Lee*, 450 Pa. 152, 299 A. 2d 640 (1973).

An examination of the facts adduced at trial reveals the following : Appellant had been at a playground with about ten other youths drinking wine. According to appellant, Harold "Turk" Gordon, one of the other gang members, had been saying all day long that he was going to get one of the members of the rival Sommerville gang. Appellant left the group to get dressed for a party and buy some more wine. When he returned "Kay", another member of the gang, came running up and said he had been hit on the head by one of the Sommerville gang. The group started walking toward the direction where "Kay" had been hit. According to appellant's testimony they passed Turk coming out of his house and appellant "asked him if he had it [a gun]. He said yes. I said, 'What you got?' He said, 'The pump,' and then showed me the barrel part from under his coat. Then he went on ahead of me."

As they were proceeding appellant stopped to hide his bottle of wine in a driveway. He lost sight of the rest of the gang. About ten or fifteen minutes later when he found them again, one member said "we got one." Appellant then told Turk that "he better take his coat off before the man comes around here."

Appellant claims that there was no evidence presented at trial showing any actual agreement, any group plan to commit murder, or that appellant actually acquiesced in any such plan. However, it is established law in this Commonwealth that a conspiracy may be proved by circumstantial evidence as well as by direct evidence. *Commonwealth v. Batley,* 436 Pa. 377, 392, 260 A. 2d 793, 801 (1970); *Commonwealth v. Yobbagy,* 410 Pa. 172, 177, 188 A. 2d 750, 752 (1963); *Commonwealth v. Neff,* 407 Pa. 1, 179 A. 2d 630 (1962); *Commonwealth v. DeMoss,* 401 Pa. 395, 165 A. 2d 14 (1960); *Commonwealth v. Musser Forests, Inc.,* 394 Pa. 205, 210, 146 A. 2d 714, 716 (1958); *Commonwealth v. Evans,* 190 Pa. Superior Ct. 179, 201, 154 A. 2d 57, 71 (1959), aff'd per curiam, 399 Pa. 387, 160 A. 2d 407 (1960). Although more than mere association must be shown, " '[a] conspiracy may be inferentially established by showing the relation, conduct, or circumstances of the parties, and the overt acts on the part of co-conspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed: . . .' " *Commonwealth v. Neff,* supra at 6, 179 A. 2d at 632, quoting *Commonwealth v. Horvath,* 187 Pa. Superior Ct. 206, 211, 144 A. 2d 489, 492 (1958).

Moreover, a co-conspirator is not relieved of liability because he is not present at the execution of the crime. *Commonwealth v. Burdell,* 380 Pa. 43, 110 A. 2d 193 (1955). As we noted in *Commonwealth v. Thomas,* 410 Pa. 160, 165, 189 A. 2d 255, 258 (1963): "Where the existence of a conspiracy is established, the law imposes upon a conspirator full responsibility for the natural and probable consequences of acts committed by his fellow conspirator or conspirators if such acts are done in pursuance of the common design or purpose of the conspiracy. Such responsibility attaches even though such conspirator was not physically present when the

acts were committed by his fellow conspirator or conspirators and extends even to a homicide which is a contingency of the natural and probable execution of the conspiracy, even though such homicide is not specifically contemplated by the parties (*Commonwealth v. Spardute*, 278 Pa. 37, 50, 122 A. 161)." On the basis of the testimony presented at trial there was sufficient evidence to convict appellant on the conspiracy charge.

Appellant next contends that a signed incriminating statement, obtained from him following arrest, during his detention at the police station, should have been suppressed because the statement was a product of physical coercion. At the suppression hearing appellant testified that during questioning at the police station he was beaten on two separate occasions by two different officers, and that his signed statement was induced by those beatings. However, the officer in charge of the interrogation specifically denied these allegations and testified that no physical force was employed at any point in the questioning. The suppression court chose to believe the officer's testimony and refused to suppress the statement. Appellant's testimony that he was not advised of his *Miranda* rights was also refuted by the officer and disbelieved by the court.

On this appeal appellant is merely claiming that his version of the questioning was true and the officer's version was false. Clearly this matter of credibility was decided adversely to appellant by the trial court. When the suppression court has determined that no beatings or physical coercion occurred "the appellate court will accept the determination of the [trier] of facts if there was any substantial evidence to support [its] conclusion." *Commonwealth v. Johnson*, 365 Pa. 303, 314, 74 A. 2d 144, 149, reversed on other grounds,

340 U.S. 881, 71 S. Ct. 191 (1950). See *Commonwealth v. Smith,* 447 Pa. 457, 461, 291 A. 2d 103, 104 (1972).

Appellant also contends that the statement obtained from him should have been suppressed because of the "unnecessary delay" between the time of arrest and arraignment in violation of Pa. R. Crim. P. 118. See *Commonwealth v. Futch,* 447 Pa. 389, 290 A. 2d 417 (1972). The Commonwealth argues, on the other hand, that because appellant failed to raise this *Futch* issue either at the pretrial suppression hearing, during the trial, or on post-trial motions appellant cannot now raise the issue for the first time on direct appeal. Based on this reasoning we would be inclined to agree with the Commonwealth.

However, we need not reach the *Futch* issue directly or the failure to raise it previously because under the totality of the circumstances surrounding appellant's signed statement, that statement was involuntary and should have been suppressed. *Commonwealth v. Koch,* 446 Pa. 469, 288 A. 2d 791 (1972); *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A. 2d 426 (1968). In *Butler* and *Koch* this Court specifically stated that the presence of an unnecessary delay in securing preliminary arraignment is a factor to be considered, among others, in assessing the voluntariness of a confession. Cf. *Commonwealth v. Moore,* 444 Pa. 24, 279 A. 2d 146 (1971). Thus even prior to *Futch* an unnecessary delay in arraignment could be a factor used to vitiate a confession.

In this case, viewing the evidence presented by the Commonwealth and so much of the evidence for the defense which remains uncontradicted, *Culombe v. Connecticut,* 367 U.S. 568, 604, 81 S. Ct. 1860, 1880 (1961); *Commonwealth ex rel. Butler v. Rundle,* supra at 150, 239 A. 2d at 430, there are several factors which overcame appellant's will and contributed to his confession.

Appellant was arrested at approximately 11:30 P.M. Upon arrival at police headquarters he was placed in a room where he sat isolated until 4:40 A.M. At that time an officer came in, advised him of his rights and when appellant indicated he was willing to talk without counsel the officer began interrogating him. However, at this point appellant denied any participation in the murder. The questioning lasted until 6:00 A.M. when appellant was provided with a meal. From 7:00 A.M. until 8:00 A.M. he was questioned again, still refusing to admit any complicity in the shooting. From 9:00 A.M. until 10:00 A.M., he was returned to isolation. At 10:00 A.M. he underwent a polygraph test and then at about 3:20 P.M. he was given a second meal. Between 4:20 P.M. and 5:00 P.M., appellant was again placed in isolation.

At 5:00 P.M., the interrogating officer returned and re-advised appellant of his rights. At this point the officer told appellant that they had learned from other suspects that he (appellant) was not that deeply involved in the incident in regard to the actual shooting and that in order to "make it light on himself" and "quite possibly make out better than the others," appellant should tell the officer what he knew of the incident. It was at this point that appellant decided to make a statement—after 17 hours of custody during which he was intermittently interrogated and isolated and finally told he would be treated more leniently than the others if he confessed. Approximately eight hours after appellant had signed his statement he was finally arraigned before a magistrate.

It is well established that in determining the voluntariness of a confession "[n]o single litmus-paper test for constitutionally impermissible interrogation has been evolved." *Culombe,* supra at 601, 81 S. Ct. at 1878. However, at some point in the questioning "all

of the surrounding circumstances—the duration and conditions of detention . . ., the manifest attitude of the police toward him, his physical and mental state, the diverse pressures which sap or sustain his powers of resistance and self-control—is relevant" and may serve to render any statement or confession involuntary. *Culombe,* supra at 602, 81 S. Ct. at 1879; *Commonwealth ex rel. Butler v. Rundle,* supra at 149, 239 A. 2d at 430.

Moreover, this Court has emphasized that when "[t]he questions in the voluntariness area have passed beyond the physical coercion stage to the much more difficult area of psychological coercion . . . a close analysis of all the surrounding circumstances is necessary," *Commonwealth ex rel. Butler v. Rundle,* supra, and that "the test for an involuntary confession, must concern itself with those elements impinging upon a defendant's will." *Commonwealth v. Baity,* 428 Pa. 306, 315 n.7, 237 A. 2d 172, 177 n.7 (1968). Thus in the instant case we must weigh all the factors influencing appellant's will at the time he made his statement. The record evinces *uncontradicted* evidence that appellant, a 20-year-old with a tenth grade education, was isolated for several periods of time; that upon his initial interrogation he refused to admit involvement in the shooting; that eleven hours later when told by the police he would get more lenient treatment if he confessed, he signed an incriminating statement; and that he was not arraigned until some twenty-five hours after arrest.

The combination of all these factors based on the Commonwealth's uncontradicted evidence constituted a subtle but nonetheless powerful form of impermissible psychological coercion. See *Spano v. New York,* 360 U.S. 315, 79 S. Ct. 1202 (1959). We conclude that appellant's signed statement was involuntary and should therefore have been suppressed.

Judgment of sentence reversed and a new trial granted.

Mr. Justice EAGEN and Mr. Justice POMEROY concur in the result.

Mr. Chief Justice JONES dissents.