## Commonwealth *v.* Madilia, Appellant.

Submitted January 28, 1970. Before Bell, C. J., Jones, Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

*William J. Myers,* for appellant.

*Richard W. Linton,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, July 2, 1970:

In 1962, following a trial by jury at which he was represented by privately-retained counsel, appellant Anthony Madilia was found guilty of murder in the second degree. Motions for new trial and in arrest of judgment were thereafter filed and denied, and the court below sentenced appellant to nine to eighteen years in prison. No appeal was taken.

In 1968 appellant filed a petition under the Post Conviction Hearing Act of January 25, 1966, P. L. (1965) 1580, 19 P.S. 1180-1 et seq. Counsel was appointed to represent appellant, and three evidentiary hearings were held. The principal issues before the court were whether appellant had knowingly waived his right to appeal with the assistance of free counsel if indigent and whether certain oral statements made by appellant to investigating police officers were properly admitted at trial. The lower court found that the statements in question were voluntary and admissible but granted appellant the right to appeal *nunc pro tunc* from the judgment of sentence "to the extent that the power so to do rests in this Court."[1]

Taken in the light most favorable to the Commonwealth, the facts of this case are as follows: Shortly after midnight on June 27, 1962, appellant drove his nine-ton dump truck away from a house trailer located in Shirley Township, Huntingdon County, in which he lived with his wife. In so doing, he ran over his wife, instantly causing her death. At approximately 3:15 A.M. the same morning, appellant was located by state police officers at his place of employment. They asked

---

[1] We have recently reviewed the lower court's power to adjudicate defendant's denial of his right to appeal and to grant a right to appeal as though timely filed and the procedure it should follow when doing so. See *Commonwealth v. Faison*, 437 Pa. 432, 436-437, nt. 4, 264 A. 2d 394 (1970) and Pennsylvania Rule of Criminal Procedure 325 (adopted May 4, 1970). See, also, *Commonwealth v. Beecham*, 438 Pa. 326, 265 A. 2d 372 (1970).

him to accompany them to the Huntingdon police barracks, and he agreed to do so. While en route, appellant was informed by the police that his wife had died after having been run over by his truck; he was further told that he had a right to remain silent. Nothing more was said on the trip to the barracks.

While at the police barracks, appellant was informally questioned about the incident by police officers and the then district attorney, all of whom had known appellant previously. This conversation lasted approximately one hour; according to one officer's notes of the conversation, appellant recounted the events leading up to his departure with the truck but indicated that he did not realize that he had run over his wife as he was leaving and had not intended to do so.

Later in the day appellant was transferred to the county jail and again spoke with police officers concerning the events preceding his wife's death. This conversation lasted approximately forty-five minutes, and appellant's statements followed his previous comments in all material particulars. At the end of this conversation, appellant was asked if he would make a written signed statement along the lines of his comments to the police. At that point he stated that he had secured the services of a lawyer and would not sign such a statement without the lawyer's consent. When he was unable to contact the lawyer, all questioning was terminated.[2]

At trial the officers involved in each conversation testified concerning appellant's oral comments, relying on notes they had made during the conversation.[3]

---

[2] Later that evening appellant was brought before a justice of the peace and charged with voluntary and involuntary manslaughter. Madilia was not charged with murder until September of the same year—some three months after his wife's death.

[3] Appellant testified in his own behalf at trial and the narrative of events which he then related was virtually identical to that

Appellant contends that his oral statements to the police were not voluntary and that evidence as to those statements was improperly admitted. Appellant's trial having preceded *Escobedo v. Illinois,* 378 U.S. 478 (1964) and *Miranda v. Arizona,* 384 U.S. 436 (1966), the issue is whether under the totality of the circumstances here present, it may be said that appellant's statements were the product of a free and unconstrained will. See *Johnson v. New Jersey,* 384 U.S. 719 (1966); *Davis v. North Carolina,* 384 U.S. 737 (1966); *Culombe v. Connecticut,* 367 U.S. 568 (1961); and *Commonwealth v. Willman,* 434 Pa. 489, 255 A. 2d 534 (1969).

At the PCHA hearing on this matter the officers and the district attorney testified that the questioning of appellant had been informal and conversational in nature. They specifically stated that appellant had not been threatened, subjected to any pressure or coercion, or mistreated in any way. Although appellant was said to be shocked at word of his wife's death and sad and morose thereafter, he was not unduly fatigued when initially contacted by the police nor at any point in the questioning process. He was not under the influence of alcohol and was in all respects in control of his senses. During his stay at the police station he made several calls to relatives and retained an attorney. None of this testimony was contradicted by appellant, and nothing in the present case suggests that appellant's comments were the product of duress or coercion.

On the contrary, appellant appears to argue that the friendliness of the police, together with the state-

which he had given the police. There was no issue at trial as to whether appellant had performed the acts resulting in his wife's death; the issue was whether his acts in this regard had been intentional or whether his wife's death was the result of an accident of which he was unaware at the time of its occurrence.

ment by one officer that the appellant might soon be released on bail, lured into making statements to the police which were not truly voluntary. The police in holding out the possibility of bail were apparently speaking in good faith; appellant was in fact freed on bail the following morning and was not charged with murder until some months thereafter when more evidence had been obtained concerning the events preceding his wife's death. At one of the PCHA hearings on this issue, appellant himself explained his statement in the following terms: "Well, at the time, I didn't think anything was going—there was going to be any big outcome such as a murder trial out of it, so I figured I had nothing to hide to tell them exactly what I had told them in the morning, and I felt I could get out of jail and get my wife's funeral arranged and everything else." Nothing in the apparently conversational tone of appellant's questioning was calculated to undermine appellant's will or induce him to make a false statement. See *Commonwealth v. Willman, supra,* and *Commonwealth v. Baity,* 428 Pa. 306, 237 A. 2d 172 (1968).

Finally, the nature of appellant's oral statements belies the present claim of involuntariness, for they were largely exculpatory and were substantially the same as his own trial testimony.

The lower court's conduct of the proceedings on appellant's petition was careful and exemplary. Upon a review of the evidence, we are persuaded that it correctly found that oral statements given to the police after two interviews lasting less than two hours were voluntary and were properly admitted at trial.

Judgment of sentence affirmed.