Commonwealth *v.* Murphy, Appellant.

Submitted December 7, 1970. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Jonathan Miller* and *John W. Packel,* Assistant Defenders, and *Vincent J. Ziccardi,* Defender, for appellant.

*Louis A. Perez, Jr.* and *Milton M. Stein,* Assistant District Attorneys, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., September 21, 1971:

The appellant, David Murphy, an 18 year old, was indicted on charges of assault and battery and aggravated assault and battery. He was found guilty of the latter charge after a nonjury trial. The charges arose out of a fight on a Philadelphia street on the night of August 2, 1969 in which a number of participants were involved and two people were stabbed. The police received information that appellant was seen in the fight with a knife in his hand, and at about 3:00 a.m. on Au-

gust 3, 1969 they went to his home. Murphy was taken from his house to a police station where he arrived at around 4:00 a.m. At a little after 10:00 a.m. that morning the appellant confessed to the stabbings, and this confession formed the basis of his subsequent conviction.

It is appellant's contention that: (1) The admission of his confession was in violation of the holding in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R. 3d 974 (1966) (hereinafter referred to as *Miranda*); and (2) the extraction of the confession violated due process of law because of the manner in which it was procured by the police.

Appellant argues that the *Miranda* case barred the introduction of his confession in this case. The *Miranda* decision repeatedly emphasizes that warnings must be given to the accused before any actual questioning begins.[1] Our own State Supreme Court has also stressed the requirement of adequate warnings before

---

[1] "To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned *prior to any questioning* that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to *the presence* of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. . . . *After* such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." 384 U.S. at 478-79, 86 S. Ct. at 1630, 16 L. Ed. 2d at 726 (Emphasis added).

questioning. See *Commonwealth v. Singleton,* 439 Pa. 185, 266 A. 2d 753 (1970); *Commonwealth v. Bennett,* 439 Pa. 34, 264 A. 2d 706 (1970). It is undisputed in this case that David Murphy was given the *Miranda* warnings at 10:00 a.m. on August 3, 1969, the morning he was taken to the police station. However, the appellant makes a three-pronged argument to support his conclusion that the introduction of his confession was violative of *Miranda.*

Appellant's first attack on the basis of *Miranda* is his contention that the police questioning began before the *Miranda* warnings were given in this case. The appellant testified that he was questioned intermittently for about six hours from the time he arrived at the station, at about 4:00 a.m., until he was given the warnings at 10:00 a.m. and subsequently confessed. Detective Hodgson, the officer who took the appellant's confession, testified that appellant was not questioned at all until 10:00 a.m., and then only after the *Miranda* warnings were given. The officer stated that after Murphy was picked up, he was left in an interrogation room while other investigations concerning the stabbing took place; he testified that no questions were asked of the appellant during those six hours. The only communication with the accused, the policeman explained, was to inform Murphy that he was being held for investigation. Murphy's parents, although they did not hear any questioning of their son, testified that another officer told them, between 4:00 a.m. and 10:00 a.m., that questioning of David was taking place. They did talk with David for a few minutes, however, during this time. The defendant claims that the version of the police as to the occurrences on that morning is incredible and inconsistent.

The resolution of this conflict in testimony was for the finder of fact, in this case for the judge sitting with-

out a jury. *Wilbert v. Pittsburgh Consolidation Coal Co.*, 385 Pa. 149, 122 A. 2d 406 (1956). Testimony showed that as many as fifty people may have been involved in the fight the night before. Two people were stabbed. The police explained that appellant was taken to the police station as one of a number of suspects, and it was not until later in the morning, when Murphy's sister and another person identified him as the knife carrier in the incident, that he became the prime suspect. It was at this time, police testified, that they gave Murphy the warnings and initially questioned him. This explanation of the occurrences of that night is not so unreasonable or patently improbable that our court can upset the findings of the trial judge who believed it to be true.

It is claimed that the police testimony at trial was inconsistent with earlier testimony by the same officers at a suppression hearing concerning the confession. Again, we must repeat that the resolution of such conflicts and inconsistencies is for the finder of fact and the reviewing court will not determine the credibility of witnesses (*Commonwealth v. Woodhouse*, 401 Pa. 242, 164 A. 2d 98 (1960)) or resolve conflicts in evidence (*Commonwealth v. Horn*, 186 Pa. Superior Ct. 429, 140 A. 2d 847 (1958), affirmed, 395 Pa. 585, 150 A. 2d 872 (1959). Accordingly, the first argument of the defendant must be rejected.

Secondly, the defendant argues that even if he was not formally questioned until 10:00 a.m., he was entitled to the *Miranda* warnings immediately after being taken into custody because it was at this time that the interrogation process really began. This presents an interesting legal question, and one that is not easy to resolve.

*Miranda*, to repeat, requires that the constitutional warnings be given before any "interrogation" or "ques-

tioning" of a suspect. The point at which the warnings are required is described as before the interrogation *process*: *Miranda*, supra, at 445, 86 S. Ct. at 1612, 16 L. Ed. 2d at 707; *Escobedo v. Illinois*, 378 U.S. 478, 491, 84 S. Ct. 1758, 1765, 12 L. Ed. 2d 977, 986 (1964); or at the *outset* of interrogation: *Davis v. North Carolina*, 384 U.S. 737, 740, 86 S. Ct. 1761, 1764, 16 L. Ed. 2d 895, 898 (1966); *Miranda*, supra, at 445 and 457, 86 S. Ct. at 1612 and 1619, 16 L. Ed. 2d at 707 and 714; or at the beginning of the questioning *situation*: *Commonwealth v. Jefferson*, 423 Pa. 541, 545, 226 A. 2d 765, 768 (1967). *Miranda* further explains that custodial interrogation occurs when an investigation *focuses on a suspect*. *Miranda*, supra, at 444, n.4; see also *Commonwealth v. Bordner*, 432 Pa. 405, 413, 247 A. 2d 612, 616 (1968).

An application of the guidelines established in the decisions outlined above, plus the particular fact situation in the instant case, results in our determination that the warnings were not constitutionally required until the time they were given, at 10:00 a.m.

After a verdict of guilty, our court must accept as true all of the Commonwealth's evidence upon which the finder of fact could have properly based the verdict. *Commonwealth v. Gockley*, 411 Pa. 437, 192 A. 2d 693 (1963). After so reviewing the evidence, we summarize it as follows: The stabbing in question was perpetrated by one actor in a gang attack and fight involving up to fifty men. It took place late at night. Neither of the two stabbing victims was certain of the identity of the attacker. The weapon was not available. Other suspects were apprehended during the night following the fracas. The police testified that although they picked up the defendant at 3:00 a.m., the focus of the investigation was on other suspects until about 10:00 a.m., at which time the defendant became a prime suspect and

received his warnings and was questioned. Before this time, the defendant was merely notified that he was being held for investigation; he was asked no questions and was even allowed to speak to his parents and his stepsister twice for up to 15 minutes each time. It is most significant that his stepfather testified that David was not the only one being held in the same interrogation room for later questioning in the same investigation. Another suspect shared the room for at least some of the time between 4:00 a.m. and 10:00 a.m. Under these circumstances it was not a violation of *Miranda* standards to wait until 10:00 a.m., when he first stood in the focus of the investigation, to give the warnings to Murphy.

Murphy suggests that this court require adequate warnings both immediately after the arrest *and* just prior to formal questioning where there is an interval between the two. The appellant argues that the words "questioning process" and "questioning situation" indicate that the crucial period before which the warnings are required does not necessarily begin with the formal asking of questions. We can fully appreciate the merit of appellant's argument in a case where a person under arrest is subjected to the dangers of mental stress, strain, anguish, and physical fatigue which an unreasonable detention can bring and which can render meaningless any warnings which might follow. In such a case, a single warning may be inadequate to maintain the suspect's awareness of his rights throughout such an ordeal. This is not such a case. The appellant ate, slept, talked to his parents, and but for the passage of time, did not in any way suffer any undue physical or mental hardship. The delay after custody in this case cannot be seen as the kind of "softening-up" process which would have overcome this 18 year old's resistance to police questioning after he was advised of his rights

at 10:00 a.m.  We cannot ask or expect the police to perform like robots, with computer-like precision in each case.  The solution of these problems by the police is not a matter of pushing a few buttons.  As long as we can look at all the circumstances surrounding any delay involved and conclude that the delay is not unreasonable and the defendant has not been in any way harmed thereby, we see no valid ground for reversal.

Defendant's third argument is that the warnings were incomplete in failing to inform him that he could demand counsel after the questioning had begun, as well as before.  It is certainly true, of course, that the defendant must have the opportunity to call counsel at any time throughout the interrogation.  See *Miranda,* supra, at 473-74, 86 S. Ct. at 1627, 16 L. Ed. 2d at 723, and *Commonwealth v. Bennett,* supra, at 38-39, 264 A. 2d at 708.  However, in making this argument, appellant has chosen to ignore certain parts of the warnings given him.  The record shows that the following warnings were given to the appellant: "A. You have a right to remain silent and do not have to say anything at all.  B. Anything you say can and will be used against you in court.  C. You have a right to talk to a lawyer of your own choice before we ask you any questions, and also to have a lawyer here with you while we ask questions.  D. If you cannot afford to hire a lawyer and you want one, we will see that you have one provided to you free of charge before we ask you any questions.  E. If you are willing to give us a statement, you have a right to stop any time you wish" (N.T. 4).

In addition, the appellant replied in the affirmative to the following questions: "Do you understand that you have a right to remain silent and do not have to say anything at all?", "Do you understand that you have a right to talk with a lawyer before we ask you any questions?", "Do you understand that if you can-

not afford to hire a lawyer and you want one we will not ask you any questions until a lawyer is appointed for you free of charge?" When Murphy was asked: "Do you want either to talk with a lawyer or to have a lawyer with you while we ask you questions?" and "Do you want to remain silent?", he answered in the negative to both questions. Viewing the totality of the circumstances, as we must (*Commonwealth v. Bordner*, 432 Pa. 405, 419, 247 A. 2d 612, 619 (1968) ; *Commonwealth v. Eperjesi*, 423 Pa. 455, 471, 224 A. 2d 216, 224 (1966) ), we find this set of warnings to be adequate under *Miranda*, and the statement to have been properly taken and correctly admitted into evidence. We note also that in the recent case of *Commonwealth v. Franklin*, 438 Pa. 411, 265 A. 2d 361 (1970), the Supreme Court of Pennsylvania passed on exactly the same series of warnings and upheld them as an adequate compliance with *Miranda*.

Finally, David Murphy seeks to invalidate his conviction by arguing that the taking of his confession violated due process of law. He claims that his will was overborne and hence his confession was involuntary. To support this argument the defendant cites his age, his fatigue, his minimum prior contact with police, and his confinement "practically incommunicado" for six hours. We must, at the outset, reject his further claim that he was questioned for six hours before the *Miranda* warnings for those reasons outlined earlier in this opinion.

In general, a confession may not be admitted into evidence if, considering the totality of the circumstances (*Commonwealth v. Madilia*, 439 Pa. 125, 128, 266 A. 2d 633, 635 (1970) ; *Commonwealth v. Graham*, 408 Pa. 155, 163, 182 A. 2d 727, 731 (1962) ) and all the relevant factors (*Davis v. North Carolina*, supra, at 742, 86 S. Ct. at 1764, 16 L. Ed. 2d at 898 (1966) ),

the confession was not a product of the defendant's free and unconstrained will (*Commonwealth v. Madilia*, supra, at 128, 266 A. 2d at 635) or the defendant's will was overborne (*Reck v. Pate*, 367 U.S. 433, 440, 81 S. Ct. 1541, 1546, 6 L. Ed. 2d 948, 953 (1961); *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 151, 239 A. 2d 426, 431 (1968)). Each case must, of course, be considered on its own facts (*Culombe v. Connecticut*, 367 U.S. 568, 622, 81 S. Ct. 1860, 1889, 6 L. Ed. 2d 1037, 1069 (1961); *Commonwealth ex rel. Butler v. Rundle*, supra, at 150, 239 A. 2d at 431).

Defendant claims that he was fatigued and, of course, a suspect's fatigue is a relevant factor in determining voluntariness. See *Spano v. New York*, 360 U.S. 315, 79 S. Ct. 1202, 3 L. Ed. 2d 1265 (1959); *Commonwealth v. Willman*, 434 Pa. 489, 494, 255 A. 2d 534, 536 (1969). In this case the only evidence to support this claim is defendant's testimony and that of his parents that he was very tired that morning. It is significant that he was permitted to go to sleep in the interrogation room after he was brought in. Whatever fatigue he experienced was not accompanied in any way by conduct on the part of the police that could be considered anything but courteous under the circumstances. Certainly it could not be considered the type of fatigue that would have compelled Murphy to confess to two very serious criminal acts.

A defendant's age and prior contacts with police are often relevant in determining the voluntariness of a confession, but these factors do not seem significant here. The record shows only that David Murphy was 18 years old and that he had no real material contact with police before this event took place, though he did have some experience with juvenile authorities. These facts are insufficient to sustain a claim that the defendant was of such tender age and experience that he

did not understand the significance of his confession. Without more proof, we cannot say that David's will was overborne and his confession involuntary because of his age and inexperience. Murphy claims that he was held "practically incommunicado" for six hours and that this should invalidate his confession and make it inadmissible. The record shows that David was placed, with another suspect, in an interrogation room, not a cell, at the station house. He was visited by his parents at two different times, for periods of up to fifteen minutes each time, his stepsister also being present on one of those occasions. Neither appellant nor his family asked to confer with a lawyer, or to see friends or neighbors. David also, as already stated, spent time sleeping. He also had access to, and made use of, comfort facilities at the station. Under these circumstances, appellant's claims that "practically incommunicado" confinement forced him to confess must be considered to be without merit.

We find no grounds for reversal. Affirmed.

---

DISSENTING OPINION BY SPAULDING, J.:

I respectfully dissent.

The decision of the court is contrary to the spirit of *Miranda v. Arizona*, 384 U.S. 436 (1966). Appellant David Murphy, an 18 year old youth, was taken from his home without warning in the middle of the night (3 a.m.), to the hostile surroundings of the police station and advised only that he was being held for investigation.

*Miranda* was based on the fact "that the modern practice of in-custody interrogation is psychologically rather than physically oriented." *Miranda*, supra, at 448. Pressures to confess certainly exist even when there is no "overt physical coercion" or "patent psychological ploys." Being alone with the police in unfa-

miliar surroundings combined with an ignorance of constitutional rights and police practices creates an atmosphere for an accused which I believe is inherently coercive.[1]

Appellant should have been informed of his rights as soon as he was taken into custody at approximately 3 a.m. and again before the actual questioning began at about 10 a.m. The entire course of events, from arrest through actual questioning was a single integrated interrogation process. The hours of custodial detention were an essential part of this process, and they should not be artificially divorced from the interrogation. Being told of his rights as soon as he was taken into custody would have relieved appellant of some of the tensions brought about by subsequent police tactics and might have prompted a request for counsel—the only effective way to guarantee those rights.[2]

I would remand the record for a new trial.

HOFFMAN, J., joins in this dissenting opinion.

---

[1] As to psychological pressures in general, with and without *Miranda* warnings, see "Interrogations in New Haven: The Impact of Miranda," 76 Yale L.J. 1519 (1966) and Driver, "Confessions and the Social Psychology of Coercion," 82 Harv. L. Rev. 42 (1968).

[2] "If the suspect waives his right to have counsel present, it would seem that the other warnings and rights are not likely to give much support to a suspect under the full glare of interrogation, even if he remembers them." Driver, "Confessions and the Social Psychology of Coercion," supra, at p. 60.