Commonwealth *v.* Magee, Appellant.

Argued September 28, 1971. Before Jones, Eagen, O'Brien, Roberts, Pomeroy and Barbieri, JJ.

*Andrew J. Conner,* with him *Dunn, Wolford & Sesler,* for appellant.

*Michael M. Palmisano,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, December 20, 1971:

This is an appeal from a first-degree murder conviction and a judgment of sentence of life imprisonment entered after a jury trial on February 19, 1954. After a series of proceedings which need not concern us,[1] appellant was allowed to file motions for a new trial and/or an arrest of judgment, as if they had been timely filed subsequent to his 1954 conviction. After these motions were denied by a court en banc, this appeal was filed.

Appellant's principal argument concerns what he alleges was the improper admission of an inculpatory statement made by him to the Pennsylvania State Police. Even though this matter comes to us on direct appeal, the fact that appellant was not given the *Miranda* warnings before he made his statement is of no consequence. The exclusion of statements made in the absence of *Miranda* warnings has been limited to cases coming to trial after *Miranda* was announced. *Johnson v. New Jersey,* 384 U.S. 719 (1966). Consequently, in determining whether appellant's pretrial statement was properly admitted into evidence, the issue is whether appellant's statements were the product of a free and unconstrained will. *Commonwealth v. Madilia,* 439 Pa. 125, 266 A. 2d 633 (1970).

In the instant case, after appellant filed his post-trial motions, an evidentiary hearing was held on August 24, 1970, to determine the voluntariness of the alleged confessions. Thus, appellant received an independent determination, outside of the presence of a

---

[1] See *Commonwealth v. Magee,* 436 Pa. 57, 258 A. 2d 508 (1969), *Commonwealth v. Magee,* 428 Pa. 186, 236 A. 2d 818 (1968).

jury, of whether his confession was voluntarily made, as he is entitled to under the law enunciated in *Jackson v. Denno*, 378 U.S. 368 (1964), made retroactive in Pennsylvania in *Com. ex rel. Butler v. Rundle*, 416 Pa. 321, 206 A. 2d 283 (1965), at pages 329 and 330.

The evidence at this hearing showed that appellant was arrested by Pennsylvania State Police on November 16, 1953, at his home in Conneaut, Ohio. He was taken in handcuffs and shackles to the Conneaut, Ohio, City Hall for the purpose of finding a judge to sign extradition papers. When no judge was available, appellant indicated he was willing to return to Pennsylvania. Appellant was then taken to the East Springfield Barracks in Pennsylvania, where he was kept from approximately one-thirty in the afternoon to six-thirty, at which time he was questioned and made his statement. During the period of delay, he was given food, cigarettes, and water, but he was not questioned. According to police testimony, the delay was occasioned by the desire on the part of the police first to obtain the statement of one Fred Saltsgiver, who had originally informed the police that appellant had given him a watch formerly belonging to the victim. The police explained that they wanted to confront appellant with Saltsgiver's statement concerning the watch. Even though it was not required at the time, appellant was warned that any statements made by him would be used against him at trial.

The testimony at the hearing indicates that appellant was relaxed and was at no time threatened in any way. Based on the record at the hearing, considering the totality of the circumstances, we cannot find that appellant's confession was anything but voluntarily made.

Appellant also argues that the court erred in charging that the defendant could be found guilty of first-degree murder under the felony murder rule.

The testimony at the trial revealed that appellant, a hitchhiker, was picked up by the victim, George Harrington. After the men stopped for a few drinks, Harrington, a homosexual, allegedly made advances to appellant which were forcibly resisted, particularly by a blow to the back of the neck. The blow may have broken the victim's neck, totally paralyzing him. Appellant then took Harrington's watch, put the inert Harrington in the back of the car and drove the car into Erie, Pennsylvania, where he parked it in an outside parking lot. The next day, appellant, with the immobile Harrington still in the backseat, drove the car to a lonely spot east of the City of Erie, where he removed Harrington's paralyzed body from the rear of the vehicle and placed it in the trunk. He then covered Harrington and the car with highly inflammable paint thinner, set fire to it and ran.

Appellant's explanation of these facts is that he set fire to Harrington because he believed that Harrington was already dead and that the blows he inflicted on Harrington were justifiable in self-defense of Harrington's homosexual assaults, rather than being done with the intent to rob Harrington.

If this explanation were correct, the Commonwealth would not have proved a felony murder because, even though appellant took Harrington's watch, there was insufficient evidence to show that it was a violent taking and thus a robbery, *Commonwealth v. Simpson*, 436 Pa. 459, 260 A. 2d 751 (1970), and if there was no robbery, then there was no felony to support a conviction of felony murder.

However, appellant told Saltsgiver when he gave him the watch that "he [appellant] had just rolled a queer." Moreover, appellant had explained to the police that he took off Harrington's shoes and searched them, after he had struck Harrington, because "these

kind [sic] of men [homosexuals] sometimes carry money in their shoes." The Commonwealth, theorizing that since homosexuals are known prey for youthful robbers (the victim was close to sixty, appellant thirty years younger), argued that appellant had formed the intent to rob Harrington before he beat him, and that appellant's statement about searching the shoes was evidence of this felonious intent. Additional evidence in support of the Commonwealth's view is apparent in appellant's statement to the police, where he admitted that, although Harrington was totally paralyzed after the blow to his neck, appellant still believed him to be alive. We find no error in the court's decision to submit the question of felony murder to the jury.

Since the evidence showed that the victim was not dead at the time he was set afire, and that the appellant was aware of this fact, the court was justified in charging the jury, despite appellant's arguments to the contrary, that there was little evidence to show that appellant had killed Harrington in self-defense.

Appellant also argues that the trial court charged incorrectly with respect to appellant's contention that he was too intoxicated to be guilty of first-degree murder. We need not reach the question of whether appellant's failure to take specific exception to that portion of the charge precludes the raising of that issue on appeal. We are not faced with determining whether the alleged error in charge is of a basic and fundamental character, thereby being preserved for purposes of appellate review by a mere general exception to the charge, because we believe that the charge, read in its entirety, in the context of this felony murder case, as distinguished from a first-degree murder case dependent upon proof of intent, was correct.

Judgment of sentence affirmed.

Mr. Justice JONES, Mr. Justice ROBERTS and Mr. Justice POMEROY concur in the result.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.

