Commonwealth *v*. Willman, Appellant.

Argued January 8, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Vedder J. White,* with him *Will J. Schaaf,* for appellant.

*Richard F. Brabender,* Assistant District Attorney, with him *Michael M. Palmisano,* Assistant District Attorney, and *William E. Pfadt,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, June 27, 1969:

Appellant was arrested on July 13, 1963 on a charge of assault with intent to ravish. During the initial interrogation appellant was asked about a murder in a different case, committed in 1960, and appellant admitted that he had committed that crime. Appellant on July 13 and 14 gave several oral statements and a written confession admitting the murder. On July 18, appellant was taken to the Erie County Jail. On August 31, 1963, appellant gave another written confession. In the period between July 18 and August 31, appellant was questioned intermittently by police.

On January 17, 1964, after a pretrial suppression hearing, appellant's confessions were ruled admissible. On February 9, 1964, appellant was convicted by a jury of murder in the first degree and was sentenced to life imprisonment. No appeal was taken.

On May 2, 1968, appellant received post-conviction relief. The post-conviction court held the August 31 confession to have been involuntary and thus inadmissible and granted appellant a new trial. The July 13 and 14 statements and confessions of appellant were held voluntary and were admitted at appellant's retrial over objection. On September 23, 1968 a jury convicted appellant of murder in the second degree, appellant's motion for a new trial was denied, and appellant took this appeal.

Since it is conceded that appellant was not given the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966), before giving the confessions now at issue, appellant argues that those confessions were erroneously admitted at his second trial. Appellant contends that although his first trial took place before *Miranda,* his retrial took place after *Miranda* and thus in the second trial, the *Miranda* rules apply.

Appellant's contention has recently been rejected by the Supreme Court of the United States as a result compelled by the Constitution of the United States as interpreted in *Johnson v. New Jersey,* 384 U.S. 719, 86 S. Ct. 1772 (1966), the case which delineated the extent to which *Miranda* would apply. See *Jenkins v. Delaware,* 395 U.S. 213, 37 L.W. 4458 (1969). Although both *Johnson* and *Jenkins* permit us, as a matter of state law, to apply *Miranda* more broadly than would the Supreme Court of the United States we choose not to do so.

The opinion in *Jenkins* indicates that the Court in *Johnson* was attempting to strike a balance between the need for even-handed administration of justice and administrative burden placed on the law enforcement system by retroactive application. It is not altogether clear, even in light of this, why *Johnson* utilized a

date-of-trial test, rather than the date-of-occurrence test used subsequently in *Stovall v. Denno,* 388 U.S. 293, 87 S. Ct. 1967 (1967). It does seem, however, that the Court has wisely chosen in *Jenkins* to restrict to as great an extent as possible, within the limits of *Johnson,* the anomalous situation where the police are required to have given *Miranda* warnings before *Miranda* had been decided. Since the requirements of *Miranda* do not go to the validity of the guilt-determining process, it seems fair in striking the balance between individual rights and the administration of criminal justice to limit the retroactive application of the case. See generally Mishkin, Foreward: The High Court, The Great Writ, and the Due Process of Time and Law, 79 Harv. L. Rev. 56 (1965). This is especially true since the voluntariness test, considering the absence of *Miranda* warnings as a relevant factor, still provides a mechanism to guard against the infringement of individual liberties. See Comment, The Applicability of *Miranda* to Retrials, 116 U. Pa. L. Rev. 316, 326-27 (1967).

Appellant here indeed does claim that his confessions were involuntary. Although a hearing was held, and the confession declared voluntary in 1964, the court below correctly ruled that it was necessary to make a new determination of voluntariness under the "evolving" voluntariness test. See *Johnson v. New Jersey,* supra; *Davis v. North Carolina,* 384 U.S. 737, 86 S. Ct. 1761 (1966). Even under current standards of voluntariness, we believe that appellant's statements and confession of July 13-14 were properly introduced.

Appellant is concededly a mental defective, with I.Q. around 60. However there is no indication in the record that the police took unfair advantage of appellant's mental state, or coerced or imposed upon him

in any way. Appellant's questioning began around 10:30 p.m. on July 13, and the original hearing court found that appellant made his initial incriminating statements within 20 minutes of his arrest. He was then questioned until 3:30 a.m. on July 14, when he was given an opportunity to rest. Although appellant now claims that his quarters were inadequate, there is no indication that appellant was unable to sleep, or was at any time exhausted.

Questioning apparently did not recommence until after 1 p.m. on July 14. Appellant was questioned for several hours and was then taken before an alderman to be arraigned on the assault with intent to ravish charge. The murder was not mentioned at the arraignment. After the arraignment, questioning resumed and continued for about 3 1/2 hours until appellant signed a written statement at about 11:30 p.m.*

---

* After appellant gave his signed confession, he was kept in custody and periodically questioned until July 18, when he was taken to the County Jail. During this period, members of appellant's family asked to see him, but were told that appellant was to be given psychological and psychiatric examinations in order to determine the validity of his confession. It was felt that it would be wise to disturb appellant as little as possible during the pendency of these examinations, and appellant's family apparently agreed to not see him. There is no indication that appellant requested to see his family or that he knew that the family had accepted the police suggestion not to see him.

Although these actions by the police took place *after* appellant gave his confessions, and strictly speaking are not relevant to whether the confessions were voluntary, there is authority that at least where subsequent police conduct is sufficiently grievous, it is germane in determining police attitude in eliciting a prior confession. *Haley v. Ohio*, 332 U.S. 596, 600, 68 S. Ct. 302, 304 (1948) (Opinion of Mr. Justice DOUGLAS, joined by three other Justices). Here, however, we can hardly say that the police showed that "callous attitude . . . towards the safeguards with respect for ordinary standards of human relationship [which] com-

Although appellant was questioned over a twenty-four hour period, the interrogation sessions were separated so that there is no indication that appellant was mentally or physically exhausted nor was his will overborne by constant questioning. The fact that appellant was allowed to retire long before the police had achieved their desired aims indicates that they did *not* intend to utilize exhaustion as a mechanism to gain further admissions from appellant. Compare *Spano v. New York,* 360 U.S. 315, 79 S. Ct. 1202 (1959). Appellant made his initial admission almost immediately, at a time when there is no question that his statements could be anything but voluntary. This, of course, does not necessarily validate his later admissions, see *Gallegos v. Colorado,* 370 U.S. 49, 54-55, 82 S. Ct. 1209, 1212-13 (1962), but after the first statement, the record indicates that the police were interested in filling in the details, and perhaps in making sure that appellant's original admission was true and not the product of confusion. Certainly appellant could have benefited by the warnings now required by *Miranda,* and he is probably the type of prisoner who most needs an attorney's aid, but in an atmosphere otherwise free of coercion, the absence of *Miranda* warnings is certainly not fatal to a finding of voluntariness.

Appellant argues that while the police acted as his friend, their motivation was to induce a confession. Even assuming that on this record, appellant has established that the mental state of the police was as he claims, this is not enough to alone invalidate the

---

pels that we take with a grain of salt their present apologia that the [interrogation] . . . was conducted in a fair and dispassionate manner." Id. Rather the police here seem to have been acting at least in part in appellant's own interest, and in no way treated him other than humanely.

confession. There is no question that it is perfectly proper for the police to question prisoners in an attempt to elicit confessions or alternatively to solve a crime or perhaps even absolve a suspect. See *Cicenia v. Lagay,* 357 U.S. 504, 78 S. Ct. 1297 (1958); *Crooker v. California,* 357 U.S. 433, 78 S. Ct. 1287 (1958). In pre-*Miranda* cases our inquiry is whether the *means* used to gain the confession caused the confession to be involuntary. A friendly attitude toward the prisoner is hardly the type of police conduct which leads to a finding of involuntariness. Nowhere in the record is there any evidence that the police were in any way deceptive or dishonest in their treatment of appellant. Rather, by being friendly, the police alleviated the danger of intimidating appellant into making admissions. We certainly cannot condemn that conduct.

In summary we conclude that we will not apply *Miranda* on retrials of cases where the original trial was held before the decision in *Miranda;* and that appellant's confession and statements, evaluated under the post-*Miranda* voluntariness test, were wholly voluntary.

The judgment of the Court of Oyer and Terminer of Erie County is affirmed.

---

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE O'BRIEN:

I concur in the holding that *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966), need not be applied to retrials in Pennsylvania. I do so because as a matter of state law, I would not have chosen the date-of-trial test utilized in *Johnson v. New Jersey,* 384 U.S. 719, 86 S. Ct. 1772 (1966), but would have selected the date-of-occurrence test of *Stovall v. Denno,* 388 U.S. 293, 87 S. Ct. 1967 (1967). Thus, as a matter of

state law, I would have applied *Miranda* even less broadly than did the United States Supreme Court.

Nonetheless, I refrain from joining the majority in its endorsement of the wisdom of the decision in *Jenkins v. Delaware* 395 U.S. 213, 37 L.W. 4458 (1969), which held, as a matter of federal constitutional law, that *Miranda* need not apply to retrials. That decision sets forth the law of the land, and we must follow it, but we are not required to sing its praises. I am in agreement with the view of Justice HARLAN, dissenting in *Jenkins,* where he stated that it was "quite impossible to discern in the rationale of Johnson any solid basis for the distinction now drawn." If the Court made a mistake in *Johnson,* as I believe it did, it should have said so, rather than seizing upon distinction without a difference. While we are bound by such a distinction, we need not be so disingenuous as to assert that it is a proper one.

My quarrel with the majority's treatment of the *Miranda* issue pales in comparison with my disagreement with regard to the voluntariness issue. On the evidence which the majority sets forth,[1] I find it im-

---

[1] There is some doubt in my mind that this evidence is properly before us. It was not presented in the suppression hearing in the instant trial. Although the petition for a suppression hearing did assert that the confession was involuntary as well as violative of *Escobedo* and *Miranda,* appellant presented no evidence at the hearing and cross-examined only as to the *Escobedo-Miranda* issue. However, appellant's attorney must have believed, quite reasonably, that it was an exercise in futility to present evidence on voluntariness since in the post-conviction proceeding which ultimately led to the new trial, the judge below here, Judge McCLELLAND, had considered all the evidence on the voluntariness of the confession at issue here, and had held it to be voluntary. Judge McCLELLAND reasserted that view in the opinion below. In light of this unusual situation, I am inclined to agree with the majority that the fairest thing to do is to consider all of the evidence with regard to voluntariness.

possible to agree that the confession was voluntary. Appellant's I Q around 60, the sustained questioning of up to five hours at a time, the lack of warnings that he had a right to counsel (let alone appointed counsel) and that anything he said would be used against him, the delay in *any* arraignment, with this murder not even being mentioned when he was arraigned, and finally, appellant's being held incommunicado for some four days after the instant confession, can lead only to the conclusion that the confession was involuntary under the totality of circumstances standard set forth in the Pennsylvania cases, see *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A. 2d 426 (1968), and the federal cases, see *Culombe v. Connecticut*, 367 U.S. 568, 601, 81 S. Ct. 1860 (1961).