## Commonwealth *v.* Purvis, Appellant.

Argued November 28, 1973. Before JONES, C. J., EAGEN, O'BRIEN. ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Earl W. Trent, Jr.,* for appellant.

*Benjamin H. Levintow,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, October 16, 1974:

Appellant, Roosevelt Purvis, was charged with the murder of one Eulie Moss. Following denial of his motion to suppress his written confession as involuntary, appellant was tried and convicted by a jury of murder in the first degree. The jury, subsequently,

fixed the penalty at life imprisonment. Post-trial motions were filed, argued and denied by a court *en banc*. Thereafter, appellant was sentenced to life imprisonment, in accordance with the penalty fixed by the jury. Appellant has appealed to this Court from the judgment of sentence. Upon review of all the circumstances, we find appellant's confession involuntary. We reverse and grant a new trial.

On April 13, 1971, at about 6:30 P.M., one Eulie Moss was stabbed in the chest on a street in Philadelphia and from the aforesaid wound he later died. Police were summoned to the scene of the incident where already a crowd had gathered. There, one of the officers heard someone in the crowd say that homicide was committed by "Sugar Bear." The officer was aware that this particular nickname was shared by two individuals in the area and was aware that one of the two persons was at that moment out of town. After having taken the victim to the hospital where he was pronounced dead, the officers were directed to take the deceased's body to the morgue. However, it was necessary that they first file reports of the incident at the police station. At approximately 8:20 P.M. en route to the station, one of the officers, who personally knew the appellant, observed him walking on the street and immediately stopped him. Appellant was taken into custody for investigation in connection with the homicide in question and placed in the rear of the police vehicle which he shared with the body of the deceased. After delivering the body of the deceased to the morgue, the appellant was taken to the homicide unit at the Police Administration Building, arriving there at about 9:00 P.M.

At 9:20 P.M. questioning of the appellant was commenced by Detectives Brown and Bittenbender. Prior to the questioning, appellant's constitutionally required warnings were administered. The initial interview last-

ed until 10:30 P.M. whereupon appellant was taken to the bathroom. The interrogation was thereafter resumed at 10:40 P.M. and finally terminated at 11:10 P.M. During the course of the two interviews, the appellant vigorously asserted that he had no connection with the homicide then under investigation.

At 12:30 A.M., on Wednesday, April 14, 1971, Purvis was given a light meal and an hour later at 1:30 A.M. was taken out of the interrogation room for the first of two polygraph examinations he would experience during his detention. Following the first polygraph examination, the appellant was subjected to a third interrogation by Detective Brown which lasted one hour from 2:50 A.M. until 3:50 A.M. As during his previous interrogations, Purvis denied any connection with the crime then under investigation. Following the termination of questioning, the appellant was left alone in the interrogation room handcuffed to a chair which permitted him with difficulty to place his head upon a desk adjacent to the chair in which he was seated.

A little more than two hours later, at 6:00 A.M., the appellant was again interrogated for a period of one hour and forty minutes, this time by a Detective Thornhill without rewarning the appellant of his constitutionally required rights. As he had done before, Purvis denied any connection with the homicide then under investigation. Between 7:40 A.M. and 11:15 A.M., Purvis was again left alone in the interrogation room, permitted to rest and served a meal. The interrogation was resumed at 11:15 A.M. with Detective Bittenbender questioning the appellant for the next thirty-five minutes until 11:50 A.M. Appellant persisted in his denials of any connection with the homicide then under investigation. The next interrogation session was conducted by Detective Grace which commenced at 12:45 P.M. and terminated twenty minutes later at

1:05 P.M. All involvement with the criminal episode was denied by the appellant. At this time when offered a meal he refused. From 1:05 P.M. until 3:40 P.M. when Purvis was taken from the interrogation room to the basement of the building for a second polygraph examination, the appellant was apparently left alone, except for brief questioning by Detective Smith and permitted to use the restroom. Following the second polygraph examination, the appellant was fed at 7:15 P.M. The final interrogation session commenced at 7:30 P.M. by Detective Brown. At this time he was confronted with information obtained during the course of the investigation from three informative witnesses incriminating the appellant; subsequently Purvis made the first oral admission. The oral interview lasted until 8:15 P.M. At this time the appellant was formally apprised of his constitutional rights and a signed written statement was obtained by 8:45 P.M., approximately twenty-four hours after having arrived in custody at the Police Administration Building.

This Court has recognized, with regard to the propriety of various police investigative procedures not involving the employment of obvious brutality, it is quite impossible to construct a rigid test whereby the power of interrogation allowed to law enforcement officers in obtaining confessions would be precisely delineated or surrounded with specific, all inclusive restrictions. A flexible test for determining if the statements by the accused of a crime are voluntary or if such evolved from constitutionally impermissible forms of interrogation is set forth in Mr. Justice FRANKFURTER'S opinion in *Culombe v. Connecticut*, 367 U.S. 568 (1961): "The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. *Is the confession the product of an essentially free and unconstrained choice by its maker?*

If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. Rogers v. Richmond, 365 U.S. 534. The line of distinction is that at which governing self-direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession." Id. at 602 (Emphasis added). See also, *Commonwealth v. Alston*, 456 Pa. 128, 317 A.2d 241 (1974); *Commonwealth v. Simms*, 455 Pa. 599, 317 A.2d 265 (1974); *Commonwealth v. Riggins*, 451 Pa. 519, 304 A.2d 473 (1973); *Commonwealth v. Eiland*, 450 Pa. 566, 301 A.2d 651 (1973); *Commonwealth v. Davenport*, 449 Pa. 263, 295 A.2d 596 (1972); *Commonwealth v. Koch*, 446 Pa. 469, 288 A.2d 791 (1972); *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A.2d 426 (1968).

In determining the issue of voluntariness all the attending factors and circumstances must be considered and evaluated. ". . . the duration, and the methods of interrogation; the conditions of detention, the manifest attitude of the police toward the defendant, the defendant's physical and psychological state and all other conditions present which may serve to drain one's powers of resistance to suggestion and undermine his self-determination. See Culombe v. Connecticut, supra at 602; Commonwealth ex rel. Butler v. Rundle, supra at 151, 239 A.2d at 431; Commonwealth v. Eiland, supra at 574, 301 A.2d at 654; Commonwealth v. Riggins, supra at 525, 304 A.2d at 476; Commonwealth v. Banks, supra at 407, 311 A.2d at 579. As we have noted, when the question of voluntariness passes beyond the realm of physical coercion and into degrees of psychological coercion, most careful attention will be afforded to any facts, circumstances or events tending to overbear the will of the accused. Commonwealth ex rel. Butler v.

Rundle, *supra* at 149, 239 A.2d at 430." *Commonwealth v. Alston, supra* at 134, 317 A.2d at 244.

A review of the record in the instant appeal reveals a blatant effort on the part of the police through systematic, frequent and persistent interrogation to undermine the appellant's capacity to resist. During the course of appellant's detention, which spanded 25 hours, he was subject to interrogation by at least five different detectives on eight occasions. This was despite the appellant's persistent and vigorous denials of any connection with the stabbing.

As the unfair frequency, length and persistence of questioning may undermine an individual's capacity to resist or make a decision whether to cooperate, so, too, circumstances such as age, intelligence, mental and physical condition of the arrested person are additional factors relevant to the issue of free choice. In the instant appeal, the appellant was twenty-one years of age at the time of the crime and possessed an I.Q. of 72. At the age of seventeen he was dropped from a special school where he was classified as "retarded, educable." Although his grade was unclassified at the time he left school he was in what was the equivalent of the sixth grade with a reading level between the first and second grade. At the time of the interrogation the appellant was under treatment at an area hospital on methadone and had been taking methadone regularly before his arrest. While under detention and interrogation he was without access to his medication and subsequently became sick to an extent at one point in his detention that he was forced to push aside one meal. Although the investigating detectives testified that the appellant was coherent, alert and showed no signs of going through drug withdrawal, one investigating detective did notice about mid-afternoon that the appellant appeared tired. The only manner by which the appellant was able to sleep was with his head on a

desk adjacent to the chair to which he was restrained by handcuffs. When the final interrogation commenced at which time the appellant conceded involvement in the matter, he was first confronted with the evidence that had been gathered by the police during their investigation which had occurred simultaneously with his questioning. Additionally, throughout the twenty-five hour period appellant was held in isolation completely divorced from all outside communication and support.

The facts of the instant appeal are similar to those in *Commonwealth v. Eiland, supra* and *Commonwealth v. Simms, supra.* In *Commonwealth v. Eiland, supra,* a twenty-year-old youth with a tenth grade education initially denied criminal activity, was then isolated for several lengthy periods, questioned intermittently, and examined by polygraph. After eleven hours, Eiland signed an incriminating statement. This Court reversed the conviction and granted a new trial because we concluded from the aforementioned circumstances that Eiland's confession was involuntary.

In *Commonwealth v. Simms, supra,* Simms was thirty-one years old but was never advanced past the second grade and had an I.Q. of sixty-one. He was questioned intermittently for twenty-two hours between periods of isolation lasting up to six hours. Throughout these lengthy isolation periods the appellant was handcuffed to a metal chair in a police interrogation room. Three separate polygraph tests were performed. Simms gave no incriminating statement until 6:15 P.M., more than twenty-two hours after he was placed in custody. See also, *Commonwealth v. Riggins, supra* and *Commonwealth v. Davenport, supra.*

We therefore hold that here as in *Eiland* and *Simms* the appellant was subject to unconstitutional coercion, that his will was overborne and his decision was not "the product of an essentially free and unconstrained

choice of its maker" and, hence, involuntary. *Culombe v. Connecticut, supra* at 602.

The judgment of sentence is reversed and a new trial awarded.

Mr. Justice POMEROY concurs in the result.