341 A.2d 132

**COMMONWEALTH of Pennsylvania**

**v.**

**Kenneth IRVIN, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 17, 1974.

Decided July 7, 1975.

384

Gilbert B. Abramson, Joseph Danella, Philadelphia, for appellant.

Arlen Spector, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

NIX, Justice.

Appellant was charged and indicted along with four (4) other youths for the fatal stabbing of one Isaac Saltzman which occurred in the City of Philadelphia on or about July 30, 1970. In a separate trial, appellant was found guilty by a jury of murder in the second degree and sentenced to a term of imprisonment of not less than five (5) years nor more than fifteen (15) years.[1] This direct appeal follows.

In the instant appeal, the appellant seeks a reversal of the judgment of sentence on the ground that incriminatory statements made by him to police officials were improperly introduced into evidence at trial. We agree and for the reasons that follow reverse the judgment of sentence and award a new trial.

---

1. Appellant was also convicted under a companion bill of indictment charging conspiracy. On this charge sentence was suspended. We have accepted the appeal under the conspiracy finding pursuant to the Act of July 31, 1970, P.L. 673, No. 223, art. V, § 503(a); 17 P.S. § 211.503(a) (Supp.1974–75).

Appellant was arrested on August 1, 1970, at or about 8:30 A.M. At the time of his arrest, he was seventeen (17) years ten (10) months of age. Appellant arrived at police homicide headquarters at 9:40 A.M.; the interrogation process commenced at 9:40 A.M. and resulted in a signed statement at 3:55 A.M. on August 2, 1970.

During this span of nineteen (19) hours and twenty-five (25) minutes there were ten (10) custodial interrogation periods ranging in duration from twenty (20) minutes to almost three (3) hours. The questioning was conducted by four (4) investigating detectives. Between these periods of questioning appellant was at liberty to move about in the room where he had been placed. The room was approximately twelve (12) feet by twelve (12) feet containing a desk and chairs. He was fed on three (3) occasions and permitted to have water and use the lavatory facilities when requested.

In determining the validity of a confession, it must be established that the decision to speak was the product of a free and uncoerced choice of its maker.

"The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years; the test of voluntariness. *Is the confession the product of an essentially free and unconstrained choice by its maker?* If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. *Rogers v. Richmond,* 365 U.S. 534. The line of distinction is that at which governing self-direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession." *Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961). (Emphasis Added)

See also, *Commonwealth v. Goodwin,* 460 Pa. 516, 333 A.2d 892 (1975); *Commonwealth v. Purvis,* 458 Pa. 359,

326 A.2d 369 (1974); *Commonwealth v. Alston*, 456 Pa. 128, 317 A.2d 241 (1974); *Commonwealth v. Simms*, 455 Pa. 599, 317 A.2d 265 (1974); *Commonwealth v. Banks*, 454 Pa. 401, 311 A.2d 576 (1973); *Commonwealth v. Riggins*, 451 Pa. 519, 304 A.2d 473 (1973); *Commonwealth v. Eiland*, 450 Pa. 566, 301 A.2d 651 (1973); 651 (1973); *Commonwealth v. Davenport*, 449 Pa. 263, 295 A.2d 596 (1972); *Commonwealth v. Koch*, 446 Pa. 469, 288 A.2d 791 (1972); *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A.2d 426 (1968).

Further, in determining the voluntariness of the confession, all attending factors and circumstances must be considered and evaluated.

".  .  . the duration, and the methods of interrogation; the conditions of detention the manifest attitude of the police toward the defendant, the defendant's physical and psychological state and all other conditions present which may serve to drain ones powers of resistance to suggestion and undermine his self-determination. See *Culombe v. Connecticut*, supra 367 U.S. at 602, 81 S.Ct. 1860; *Commonwealth ex rel. Butler v. Rundle*, supra 429 Pa. at 151, 239 A.2d at 431; *Commonwealth v. Eiland*, supra 450 Pa. at 574, 301 A. 2d at 654; *Commonwealth v. Riggins*, supra 451 Pa. at 525, 304 A.2d at 476; *Commonwealth v. Banks*, supra 454 Pa. 401 at 407, 311 A.2d at 579. As we have noted, when the question of voluntariness passes beyond the realm of physical coercion, most careful attention will be afforded to any facts, circumstances or events tending to overbear the will of the accused. *Commonwealth ex rel. Butler v. Rundle*, supra 429 Pa. at 149, 239 A.2d at 430." *Commonwealth v. Alston*, supra at 134, 317 A.2d 244.

See also, *Commonwealth v. Goodwin, supra; Commonwealth v. Purvis, supra.*

Under the instant facts a protracted period of interrogation spanned an interval of time in excess of nineteen (19) hours. Accepting the Commonwealth's observation that the periods of questioning were not continuous and that appellant was afforded an opportunity to eat and rest during this period we are nevertheless satisfied that the process was designed to overcome the resistance of appellant and to obtain from him a statement consistent with their belief of his guilt. More importantly the record clearly discloses that the police officials were in fact successful in achieving their objective and that the statement ultimately obtained was not the product of a free will but rather the result of coercion.[2]

For a period of five (5) hours and twenty (20) minutes after his arrest, appellant denied any knowledge pertaining to the incident. This persistent assertion of lack of any knowledge surrounding the events that led to the death of Mr. Saltzman rebuts any inference that the appellant wished to communicate information surrounding the events to police officials. During this five hour period the only communication appellant had with the outside world was with his parents for a five minute visit at approximately 11:40 A.M. At the time of this visit, the parents described their son as being emotionally upset.[3] Significantly after his parents' departure he continued to insist upon his unawareness of any of the circumstances surrounding the incident. His position remained substantially unaltered until at 1:50 P.M. when he was being prepared to undergo a polygraph examination ordered by police officials. At this time he first conceded that he witnessed the incident and observed

2. Appellant raises a question as to whether police officials made a sufficient inquiry as to whether he understood his rights. In view of our decision in this matter this issue need not be reached.

3. The Commonwealth witness Sgt. McManus corroborated the fact that Irvin was crying during his conversation with his parents.

Dennis Deen stab the victim. At 5:30 P.M. appellant was confronted with Deen, who was advised of the appellant's accusation. The two remained alone until 6:10 P. M. Even after the confrontation with Deen appellant remained steadfast in his assertion that Deen had stabbed Mr. Saltzman. It was not until 8:08 P.M. that appellant first stated that he was involved. It was at this point in the interrogation process when he admitted that he stabbed the victim. Further, he did not agree to give a written statement until 1:10 A.M. the next morning.

A realistic reading of this record rejects a finding that this young man withstood the pressures of this protracted police investigation and offered these incriminatory statements as a result of his free and unfettered will. To the contrary we are forced to conclude that there was a blatant effort on the part of the police through systematic and persistent interrogation to undermine appellant's capacity to resist and that, as a direct result of this effort, the statement was ultimately obtained. *Commonwealth v. Purvis, supra.*

Although the suppression court failed to file an opinion in support of its ruling denying the motion to suppress, the trial court in disposing of post-trial motions and upholding the decision of the suppression court relied on *Commonwealth v. Darden,* 441 Pa. 41, 271 A.2d 257 (1970); *Commonwealth v. Willman,* 434 Pa. 489, 255 A.2d 534 (1969); and *Commonwealth v. Moore,* 440 Pa. 86, 270 A.2d 200 (1970). We believe that these cases are inapposite. In *Darden, supra,* the challenged confession was obtained after only four hours of police custody and two and one-half hours of actual questioning. In *Moore, supra,* only two and a half hours elapsed between the arrest and the time the accused implicated himself. Also in *Willman, supra,* appellant made the initial incriminating statements within twenty minutes after his arrest. Our decision in *Willman, supra,* is instructive as to the

instant factual situation, however not for the reasons suggested by the Commonwealth. There we observed:

"Appellant made his initial admission almost immediately, at a time when there is no question that his statements could be anything but voluntary. This, of course, does not necessarily validate his later admissions, . . ., but after the first statement, the record indicates that the police were interested in filling in the details, and perhaps in making sure that appellant's original admission was true and not the product of confusion." *Id.* at 494, 255 A.2d at 536.

In contradistinction to *Willman, supra,* the appellant evidenced a determined desire to withhold any information that he might have possessed relating to the crime and this resolve was only overcome by the overbearing persistence of police officials. For a period in excess of five (5) hours, appellant denied any knowledge of the incident, thereafter admitting only that he witnessed the stabbing. He persisted in his lack of culpability for an additional six (6) hours. Even after orally admitting guilt he refused to give a written statement for an additional five (5) hours. Each concession was tortuously extracted from appellant only after police officials had taken full advantage of the oppressive influences of custodial interrogation.

Our decision in *Commonwealth v. Alston, supra,* provides an interesting comparison with the instant factual setting. In *Alston, supra,* the appellant was also seventeen years of age and was held in police custody for over seven (7) hours. That case is not only distinguishable because of the difference in the length of police detention but equally as important is that the authorities permitted the accused's relatives to be with and confer with him at crucial stages during the interrogation. Irvin's parents returned to police headquarters in response to a telephone call at approximately 3:00 P.M. advising them that they could see their son. After spending five

hours attempting unsuccessfully to see their son they returned home and did not see him until after the contested statement had been secured. It is thus apparent that although the parents were present they were denied the opportunity to confer with their son during the period that ultimately proved to be the most critical of the entire interrogating process.

While the record does not conclusively establish that the inability of the parents to see their son at this point was as a result of the deliberate design of the officers conducting the investigation, it is fair to conclude that it does suggest the probability of this fact. While this Court has not stated that police officials have an affirmative duty to provide a youthful accused with the benefit of a parent's counsel during questioning, any indication that they (police) prevented this right of consultation during interrogation strongly suggests an intention to preserve the isolation of the accused and to employ it as a tool to overcome his will.

The facts in the instant appeal share similar features with the facts in cases in which we have found the accused to have been subject to unconstitutional coercion and have subsequently held the confession to have been involuntary. *Commonwealth v. Purvis, supra; Commonwealth v. Simms, supra; Commonwealth v. Riggins, supra; Commonwealth v. Eiland, supra.* In each case the accused initially denied criminal activity. He was then questioned intermittently varying in each case from eleven hours to twenty-five hours. The periods of intermittent questioning were immediately followed by lengthy periods of isolation.

We, therefore, hold that the appellant was subjected to unconstitutional coercion, that his will was overborne and his decision to "admit his complicity" was not the product of an essentially free and unconstrained choice and, hence, involuntary. The oral admissions and the

written statements should have been suppressed and their introduction at trial was error.

The judgment of sentence is reversed and a new trial awarded.

EAGEN and O'BRIEN, JJ., concur in the result.

POMEROY, J., filed a dissenting opinion in which JONES, C. J., joined.

POMEROY, Justice (dissenting).

The issue of the voluntariness of appellant's confession was vigorously contested at a suppression hearing; the hearing judge found the confession to have been voluntary. At trial the defendant, as was his right, again challenged the voluntariness of the confession. Pa.R.Cr. P. 323(j), 19 P.S. Appendix (Supp.1974–75). The jury was instructed at length concerning the voluntariness issue and was specifically told that if they determined that the confession was involuntary they should "disregard [it] completely" and could properly find the defendant not guilty. The appellant has no quarrel with the judge's charge on this issue, and took no exception to it. Notwithstanding these decisions by the finders of fact at the trial level, the Court today holds as a matter of law, that the confession "was not the product of a free will but rather the result of coercion." Opinion, *ante* at 134. My own examination of the record satisfies me that the lower court result is supportable, and I would abide by its decision. I therefore dissent. *Commonwealth v. Long*, 460 Pa. 461, 333 A.2d 865, 867 (1975); *Commonwealth v. Karchella*, 449 Pa. 270, 273, 296 A.2d 732, 733 (1972); *Commonwealth v. Garvin*, 448 Pa. 258, 269, 293 A.2d 33, 39 (1972).

We have always taken a "totality of circumstances" approach to the question of voluntariness. *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A.2d

426 (1968). The length of interrogation is but one factor to be considered in determining whether a confession is truly the product of the free will of its maker. *Commonwealth v. Tucker*, 461 Pa. 191, 335 A.2d 704 (1975). The error which permeates the present decision is the giving of undue weight to but a single factor in the total group of circumstances, viz., the length of the interrogation period.

The cases cited by the majority as involving "similar features" to the instant case all reflect the totality approach. In *Commonwealth v. Purvis*, 458 Pa. 359, 326 A.2d 369 (1974), the defendant was a 21 year old who had been classified as mentally retarded and who had been undergoing methadone treatment. In light of these facts, we held his confession involuntary where he was interrogated for some 25 hours. We found the confession in *Commonwealth v. Simms*, 455 Pa. 599, 317 A.2d 265 (1974) to be involuntary where it was shown that the defendant was a 31 year old with an IQ of 61 who had been questioned for 22 hours while handcuffed to a metal chair. *Commonwealth v. Riggins*, 451 Pa. 519, 304 A.2d 473 (1973) involved a confession found to be involuntary because obtained from a 17 year old defendant who had been questioned *continuously* for 17 hours. The case cited by the majority which is perhaps the closest factually to the case at bar is *Commonwealth v. Eiland*, 450 Pa. 566, 301 A.2d 651 (1973). In that case, the defendant was a 20 year old with a 10th grade education who when interrogated by the police initially denied any involvement in the crime of which he was ultimately convicted and who was isolated for several periods of time during the span of the interrogation. He confessed 11 hours later and was not arraigned until 25 hours after arrest. In *Eiland*, however, it was not merely the length of interrogation which rendered the confession involuntary but the fact that what precipitated the confession 11 hours after interrogation began was a promise of lenien-

cy by the police if the defendant would confess. We there held that the *combination* of these factors "constituted a subtle but nonetheless powerful form of impermissible psychological coercion." Id. at 574, 301 A.2d at 654.

Considering as we must only "the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted," *Culombe v. Connecticut*, 367 U.S. 568, 604, 81 S.Ct. 1860, 1880, 6 L.Ed.2d 1037, 1059 (1961), *Tucker, supra* at 195–196, 335 A.2d at 706, that evidence in the case at bar does not warrant a finding that the appellant's confession was involuntary as a matter of law. While almost 19 and one-half hours passed between the time appellant was first questioned and the time he completed signing his formal written confession, the interrogation was not continuous during that period; Irvin was given frequent and ample opportunity to rest, eat and use the bathroom. He was permitted to see and converse with his parents. Furthermore, appellant first admitted his presence at the scene of the crime approximately 4 and one-half hours after the onset of interrogation. His admission of participation in the stabbing was made within 7 hours of this first inculpatory statement and less than 11 hours following commencement of the questioning. I find nothing in these time spans to justify this Court in accusing the police of a "blatant effort" to undermine appellant's capacity to resist, or of having "tortuously extracted" each concession from him. On the contrary, the suppression court and the jury at trial had ample evidentiary support for a finding that the entire period was taken up with legitimate efforts on the part of the police directed towards the solving of two stabbing assaults, one involving Irvin and another which occurred almost simultaneously, in order to charge those who were shown to have participated. It is for these

reasons that I am unwilling to declare, as does the majority, that the final product of appellant's interrogation was coerced and involuntary as a matter of law. Hence this dissent.

JONES, C. J., joins in this dissent.