379 A.2d 545

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Willie Lewis PERRY, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 13, 1976.

Decided Oct. 28, 1977.

2

D. M. Masciantonio, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., John DiDonato, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION

MANDERINO, Justice.

Appellant, Willie Lewis Perry, was convicted of murder in the second degree, possession of an instrument of crime, carrying firearms on a public street, and unlawfully carrying a firearm without a license. Post-verdict motions were heard and denied, and the appellant received a sentence of five to ten years imprisonment for the murder conviction. This appeal, involving only the murder conviction, followed.

The appellant asks that judgment of sentence be reversed and a new trial granted. He argues that his confession should have been suppressed because at the time of the interrogation, which produced the confession, his mental and

4

physical condition were such so as to render the statement involuntary. We agree and thus reverse the judgment of sentence and award a new trial. Our decision makes it unnecessary to consider the merits of appellant's argument that oral admissions and signed statements were obtained by the police during an unnecessary delay between arrest and arraignment in violation of Pennsylvania Rule of Criminal Procedure 130.

At 8:00 p. m., on February 15, 1974, the appellant and a friend arrived at the home of Leonard Moore to visit Moore's daughter and her friend who was visiting her. A short time after appellant's arrival, Leonard Moore returned home and ordered appellant and his friend out of his home. Moore accompanied the two men outside the house.

Moore's wife testified that her husband was shot by appellant as he turned to return to his home. Appellant testified that he thought Moore had a pistol and was about to shoot him. Moore died at 3:10 a. m., on February 16, 1974. The cause of death was gunshot wounds of the trunk area.

At 8:30 p. m., shortly after the shooting, police officers, who had received a call reporting the incident, saw appellant three blocks from Moore's home. The officers called to appellant, and as he fled he suffered an accidental, self-inflicted, gunshot wound. The appellant was immediately arrested and taken to the emergency ward of Methodist Hospital in Philadelphia. He had a gunshot wound in the chest. From the emergency ward he was taken to the x-ray department where x-rays of his chest and abdomen were taken. He was then returned to the emergency ward where his wound was administered to, although the bullet lodged in appellant's chest was not removed. Appellant was then transferred to a small cubicle located within the intensive care unit of the hospital. Throughout the night medical personnel monitored appellant's vital signs. A police guard was stationed nearby.

Around 4:00 a. m., after complaining of pain, appellant was given fifty milligrams of demerol, a pain killing drug

whose effects last about four hours. Around 9:00 a. m., appellant was given an antibiotic, tetracycline. At that time he was also given a tetanus toxoid shot. Sometime between 9:00 a. m. and 9:55 a. m., a detective requested and received permission from a nurse to question the appellant. At 9:55 a. m., on February 16, approximately thirteen hours after his arrest, the detective informed appellant of his constitutional rights and appellant indicated that he would give a statement. The interrogation continued for about one hour and twenty minutes, until 11:15 a. m. During this time appellant gave and signed an incriminating statement.

During the interview appellant was lying in bed and was alone in the room with the interrogating detective. During the interview he complained to the detective of pain and was experiencing discomfort from a catheter inserted through the penis into the bladder in order to monitor for any abnormal bleeding indicating injury to the bladder, urinary tract or kidney. At one point during the interview, when the appellant complained of pain, he asked the detective to call the nurse. When the nurse arrived, the appellant informed her that he was in pain and wanted some type of medication. Medication, however, was refused. Throughout the interview, appellant was being fed through an intravenous tube. The catheter remained in the appellant for over two days and the intravenous feeding continued constantly for about four days. At one point during the interrogation, appellant was asked by the detective if he wanted to continue the interrogation and the appellant answered that he "didn't care."

In *Commonwealth ex rel. Gaito v. Maroney,* 422 Pa. 171, 176–77, 220 A.2d 628, 630 (1966), we stated:

"It is a basic and fundamental principle of constitutional law that a defendant in a criminal case is deprived of due process if his conviction is founded, in whole or in part, upon an involuntary confession. *Jackson v. Denno,* 378 U.S. 368, 375, 376, 84 S.Ct. 1774, 1780, 12 L.Ed.2d 908 (1964); *Rogers v. Richmond,* 365 U.S. 534, 541, 81 S.Ct. 735, 740, 5 L.Ed.2d 760 (1961). The introduction of such a

confession over objection constitutes reversible error, see *Townsend v. Sain,* 372 U.S. 293, 306, 310, 83 S.Ct. 745, 755, 9 L.Ed.2d 770 (1963); *Rogers v. Richmond, supra,* 365 U.S. at 540, 81 S.Ct. at 739; *Stroble v. State of California,* 343 U.S. 181, 190, 72 S.Ct. 599, 603, 96 L.Ed. 872 (1952), even though there is ample evidence aside from the confession to sustain the conviction. *Jackson v. Denno, supra* ; *Haynes v. State of Washington,* 373 U.S. 503, 518, 83 S.Ct. 1336, 1345–1346, 10 L.Ed.2d 513 (1963); *Malinski v. People of State of New York,* 324 U.S. 401, 404, 65 S.Ct. 781, 783, 89 L.Ed. 1029 (1945)."

The line between a voluntary and an involuntary confession is one composed of subtle gradations. *Commonwealth v. Snyder,* 427 Pa. 83, 233 A.2d 530 (1967), *cert. denied* 390 U.S. 938, 19 L.Ed.2d 1281, 88 S.Ct. 1104 (1967). Our determination of this matter requires careful consideration of all circumstances surrounding the confession. We ask ourselves if the confession is the product of an essentially free and unconstrained choice by its maker. *Commonwealth ex rel. Gaito v. Maroney, supra,* 422 Pa. at 177, 220 A.2d at 631.

The legislature has recognized in another context that statements made by injured persons in a hospital setting raise very serious questions as to whether such statements should be recognized as valid by the law. The Act of June 9, 1972, P.L. 359, No. 97, 12 P.S. § 1630, et seq., prohibits the use of either written or oral statements for the purposes of civil litigation when they are obtained in a hospital from an injured patient within fifteen days of the occurrence causing the injury. In fact, statements obtained from a patient in a hospital may be legally recognized only if five days prior to the giving of the statement the injured patient has signified by a notarized writing a willingness to give the statement. Although the Act of 1972 is not applicable in criminal cases and is thus not controlling in the matter before us, it clearly indicates recognition that decisions made by injured persons in a hospital setting must be considered extremely suspect.

In considering voluntariness an accused's physical and mental condition must be considered, for sickness and ill

health may well influence his will to resist. *Commonwealth v. Holten*, 432 Pa. 11, 247 A.2d 228 (1968). In the present case, prior to interrogation, the appellant had been hospitalized with a gunshot wound. At the time of interrogation the bullet remained logged beneath his chest wall. He was being fed intravenously, and had a catheter through his penis leading into his bladder causing much discomfort. He was under police guard and had not seen a familiar face for more than twelve hours before the interrogation. During the interrogation he asked for and was denied medication for pain.

Under the circumstances, we are unable to conclude that the appellant's confession was the product of an essentially free and unconstrained choice. Appellant's confession should have been suppressed.

The prosecution contends that the admission of the incriminating statement was harmless error because the appellant, according to the prosecution, gave essentially the same statement during the trial while testifying in his own behalf. There are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error, *see Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and we adhere to the view that a conviction founded in whole or part on an involuntary confession denies a defendant due process of law and constitutes reversible error, regardless of whether there is ample evidence aside from the confession to sustain the conviction. *Commonwealth ex rel. Gaito v. Maroney, supra. See also Jackson v. Denno*, 378 U.S. 368, 376, 84 S.Ct. 1774, 12 L.Ed.2d 908, 915 (1964); *Payne v. Arkansas*, 356 U.S. 560, 567–68, 78 S.Ct. 844, 2 L.Ed.2d 975, 981 (1958). Moreover, we cannot agree with the prosecution that appellant's courtroom testimony was essentially the same as the facts contained in the incriminating statement. Appellant did not deny shooting the victim. The issue was whether or not the appellant acted in self-defense. In his trial testimony appellant testified that he saw the victim reach into his car and pull out a metallic instrument just before the victim came toward the appellant. Appellant thought that the victim

was about to shoot him. The statement taken at the hospital and recorded by the detective was different. In that statement appellant said that when the victim reached into the car it was dark and he could not see if the victim had anything in his hand. This variance was significant and we cannot say that the jury's deliberations and verdict were not affected by the inconsistency.

Judgment of sentence is reversed and a new trial granted.

EAGEN, C. J., and NIX, J., concurred in the result.

POMEROY, J., filed a dissenting opinion in which O'BRIEN and PACKEL, JJ., joined.

POMEROY, Justice, dissenting.

I must respectfully dissent, for I think the Court errs both in its presentation of the facts and in its reasoning.

The central question before us in this appeal is whether or not a statement made by appellant Willie Lewis Perry while under treatment at the Methodist Hospital in Philadelphia for a self-inflicted gunshot wound was voluntary within the meaning of the federal constitution. The standard for determining whether or not a confession is voluntary is whether the statement was "the product of an essentially free and unconstrained choice by its maker." *Commonwealth v. Irvin*, 462 Pa. 383, 386, 341 A.2d 132, 133 (1975). *Accord, Commonwealth v. Ritter*, 462 Pa. 202, 204, 340 A.2d 433, 434 (1975). There is still "no single litmus-paper test" for constitutionally permissible interrogation, *Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961), but the range of judicial inquiry is broad and judgment must be based upon a consideration of the "totality of the circumstances." *Blackburn v. State of Alabama*, 361 U.S. 199, 206, 80 S.Ct. 274, 280, 4 L.Ed.2d 242, 248 (1960).

Obviously, one important circumstance which must be considered in examining the "totality of the circumstances" is the mental and physical condition of the accused at the time an inculpatory statement is made, *Commonwealth v. Holton*, 432 Pa. 11, 247 A.2d 228 (1968), for injury or illness may influence or impair an accused's will to resist, *Reck v.*

*Pate,* 367 U.S. 433, 440, 81 S.Ct. 1541, 1546, 6 L.Ed.2d 948, 953 (1961), and thus render a self-incriminating statement involuntary. See, e. g., *Commonwealth v. Holton, supra; Commonwealth v. Maroney,* 422 Pa. 171, 220 A.2d 628 (1966).

The totality standard for ascertaining voluntariness has been applied consistently and repeatedly by our courts; in my view it provides ample protection for the rights of ill or injured persons accused of committing crimes. In stating that "[t]he legislature has recognized in another context that statements made by injured persons in a hospital setting raise very serious questions as to whether such statements should be recognized as valid by the law   .   .   .   [and] .   .   .   that decisions made by injured persons in a hospital setting must be considered extremely suspect", Opinion of the Court, *ante* at 6, the Court seems to me to be leaning towards a rule of *per se* inadmissibility of in-hospital confessions. Such statements may, indeed, demand close judicial scrutiny but this Court has never until now held such statements to be *per se* "suspect", nor until now have we felt the necessity to enunciate a special rule in such cases. I am of the opinion that such a rule is neither necessary nor wise and that in the instant case, it leads to a wrong result.

It is certainly possible for an ill or injured person to make an "essentially free and unconstrained" statement within the walls of a health care institution, and we have so held. *Commonwealth v. Moore,* 454 Pa. 337, 311 A.2d 620 (1973). To mandate the standard the majority suggests here would be needlessly to narrow the scope of permissible police investigation and to require the police to stand indefinitely idle. One may ask at what point the protection of illness or injury should be brought to an end.

My review of the record satisfies me that the trial court, both at the suppression hearing and at trial, carefully and thoroughly evaluated the circumstances relative to the voluntariness of appellant's confession, and that the statement was properly held at both stages to be knowing and voluntary.

## I.

### *The facts relative to voluntariness.*

It is uncontested that all required warnings were given prior to any questioning of Willie Perry, that Perry affirmatively indicated that he would make a statement, and that although given an opportunity to terminate the interview he at no time requested to do so or indicated a desire to remain silent.[1]

The investigation of appellant's mental and physical condition by the suppression judge was thorough indeed. It included extensive testimony from the physician in charge of appellant's care at the hospital,[2] Dr. Thomas Ranieri. In support of its conclusion that appellant's statement was involuntary the majority itemizes some of the medical proce-

---

1. Findings of fact to the above effect were made by the suppression court, N. T. (Suppression Hearing, Judge's Decision) at 6–7. Appellant does not allege that he never agreed to make a statement, but asserted in his testimony at the suppression hearing that he remembered nothing about the content of his statement or his conversation with the interrogating officer, except that he talked with a police officer and that he was in pain at the time. The suppression judge apparently found this assertion somewhat incredible, for appellant had given a detailed statement (seven pages) and testified on cross-examination that he did remember talking about the homicide with the officer, that the officer showed him the statement, that he "glanced" at it and that he held it while signing all seven pages. N.T. (Suppression Hearing) 2.67–2.70.

   In discussing appellant's desire to remain silent or terminate the interview, the Court makes a significant, if inadvertent, error in factual summary. According to the majority, "At one point during the interrogation, appellant was asked by the detective if he wanted to continue the interrogation and the appellant answered that he 'didn't care' ". The record shows the following:

   Q.: (interrogating officer) Do you feel like answering some more questions?

   A.: (appellant) *Yes*, I don't care. (emphasis mine.)

   It is unclear to me whence this Court draws its version of the exchange, as both the transcript of the suppression hearing, N.T. (Suppression Hearing) at 1.59, and the notes of testimony (N.T. 81) report it as above. The Court's omission of the affirmative "yes" renders the connotation of appellant's statement something quite different than the statement as made.

2. In addition to the testimony summarized by the majority, Dr. Thomas Ranieri, the attendant surgeon at the Methodist Hospital,

dures to which appellant was subjected. As the sole medical testimony in the trial was that of Dr. Ranieri, I must assume that the Court draws its list of procedures from Dr. Ranieri's testimony. I find it significant that the suppression court made no specific findings of fact as to the procedures this Court makes much of, and that the trial court's conclusion, after hearing the relevant testimony and evaluating the credibility of the various witnesses, differs from that of this Court.[3] Furthermore, Dr. Ranieri, called as appellant's witness, testified both on cross-examination and on redirect that these procedures, i. e., the urethral catheter and the intravenous tubing, would cause some discomfort, but not pain, and would not have caused appellant to become unaware of where he was or what he was doing. N.T. (Suppression Hearing) 2.45 *et seq.*

The intricacies of hospital procedures sound and no doubt are unpleasant. The actual effect upon appellant, however, and hence on the voluntariness of his statement, as testified to by an experienced physician who was appellant's own witness and found as fact by the suppression court, should not be ignored by this Court or avoided with sympathetic rhetoric. The sole evidence offered in contradiction to these

testified that appellant's vital signs on the 15th and 16th of February (the day of the interrogation and the day preceding it) were within the normal range, N.T. (Suppression Hearing) 2.19; that appellant was not removed from the accident ward for any surgery, N.T. (Suppression Hearing) 2.19; but that a "relatively minor" surgical procedure was performed to cleanse the wound in the accident room, N.T. (Suppression Hearing) 2.44; that appellant had no fever or serious internal injuries, N.T. (Suppression Hearing) 2.20–2.23; that the bullet was allowed to remain lodged under the surface of appellant's skin where it could be felt with an examining finger, N.T. (Suppression Hearing) 2.17; and was not removed while appellant was at the hospital, N.T. (Suppression Hearing) 2.43; and that appellant was, after these procedures, thought "safe to be transferred to the I.C.U." (Intensive Care Unit) for "further observation." N.T. (Suppression Hearing) 2.25.

3. The suppression court found that: "As a result of medical testimony submitted to the Court, the treatment and medication received by the defendant while in the Methodist Hospital did not in any way interfere with the defendant's clarity of thinking, although defendant was in some pain while being interviewed." N.T. (Suppression Hearing, Judge's Decision) at 7.

findings is to be found in appellant's testimony that he was in such pain that he neither understood the meaning of his statements nor remembered them. The possibility of this testimony being merely self-serving is obvious, and this would seem to have been the view of the lower court. Absent some clear showing of error, we are bound by the facts as the trial court found them. In my view, no such showing has been made.

## II.

### The applicable law.

In a case similar to the one at bar, *Commonwealth v. Moore, supra*, this Court upheld the validity of two confessions made by a defendant undergoing the symptoms of heroin withdrawal, one made just prior to hospitalization and the other just after treatment. We said:

"Here the suppression judge obviously chose to believe the testimony of the two police officers as to appellant's condition and ability at the time the challenged statements were given, and not that of appellant. His findings of fact were categorical that appellant, in giving his two statements, was not affected by drugs or narcotics, or by withdrawal therefrom; and that they were 'freely, intelligently and voluntarily made'. As we observed in *Com. v. Smith*, 447 Pa. 457, 291 A.2d 103 (1976):

'An appellate court does not weigh evidence or pass upon the credibility of witnesses, and there is no basis for us to hold as a matter of law that the court's finding of voluntariness of the confession was not adequately supported and well within the court's discretion.'"

*Commonwealth v. Moore*, 454 Pa. 337, 341, 311 A.2d 620, 622–23.

In my opinion, the facts in the case at bar are much closer to those of *Moore* than to those of *Commonwealth v. Maroney*, 422 Pa. 171, 220 A.2d 628 (1966), upon which the majority relies. This is particularly true in view of the medical testimony in both *Moore* and in the case at bar that neither defendant was prevented by his mental or physical condition

from understanding their respective situations and acting voluntarily. Such testimony was strikingly absent in *Commonwealth v. Maroney,* a case where the gravity of the facts stands in sharp contrast to those in the instant case.[4]

I must also voice objection to the Court's argument by analogy to the Act of June 9, 1972, P.L. 395 No. 97, 12 P.S. § 1630 *et seq.* The Court states that the statute, which prohibits the use of either written or oral statements for the purpose of civil litigation when obtained from an injured and hospitalized person within fifteen days of the event causing the injury, demonstrates a legislative concern with legal recognition in civil litigation of in-hospital statements, a concern which the Court would extend to criminal litigation. In view of the differing policy considerations underlying civil and criminal legislation, it seems to me that this argument is both tenuous and unwise. 12 P.S. § 1630 reflects a legislative attempt to protect the ill or injured from possible loss of a deserved civil remedy or from rash choice of counsel in a civil suit; it is a legislative curb on one aspect of "ambulance chasing" and on attempts to purchase releases prematurely. This legislatively created *per se* rule works no hardship on any concerned party's legitimate interest, nor does it frustrate the accomplishment of any valid state purpose. Judicial creation of a parallel rule in the criminal area, however, would not have a solely beneficent

4. In *Maroney,* this Court found that the accused's mental and physical state had sapped his powers of resistance, understanding and self-control and therefore overturned the lower court's admission of the resultant confession. The defendant in that case had been admitted to the hospital in critical condition requiring immediate surgery. During a three and one-half hour operation damage to his liver, stomach walls, diaphragm and gastro-colic omentum was repaired, his spleen was removed and 40% of his blood supply was replaced. The interrogation which produced the inculpatory statement commenced only four hours after the surgery and defendant repeatedly lapsed into and out of unconsciousness. No attempt was made to secure permission from hospital personnel to interrogate the patient or to ascertain his condition before doing so. Hospital records showed that one hour after the confession the defendant was "speaking but incoherent" and the interrogating officer testified at trial that he himself cut short the interrogation because it was evident to him that the accused's condition would not permit further questioning. *Maroney, supra,* 422 Pa. at 175–6, 220 A.2d 628.

effect. While the state is concerned to protect defendants from involuntary self-incrimination due to the effects of illness or injury, it also has a duty to protect its citizens through prompt, thorough and effective investigative action in response to crime. Accepted rules of statutory construction mandate strict construction of penal statutes, Statutory Construction Act of 1972, Dec. 6, 1972, P.L. 1339, No. 290, § 3(b)(1); 1 Pa.C.S.A. § 1928(b)(1), and broad construction of statutes such as 12 P.S. § 1630 *et seq.*, which is remedial in nature. Statutory Construction Act, *supra*, § 3(c). These rules, and their applications by the courts, underline legislative and judicial awareness of the different governmental purposes involved and suggest the inappropriateness of blending the standards of one body of law with those of the other, as the majority does today.

For the reasons stated above, I would affirm the judgment of the lower court on this issue.[5]

O'BRIEN and PACKEL, JJ., join in this dissenting opinion.

---

5. Appellant's other assignment of error is that his statement should have been suppressed as the result of unnecessary delay between arrest and arraignment. *See* Pa.R.Crim.P. 130, *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972). Since this issue is not dealt with by the majority there is no need for me to discuss it. I have, however, reviewed the record and find the claim of unnecessary delay to be without merit.